GEORGE HARRISON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Where there is evidence legally sufficient to support a verdict, this court will not reverse a ruling of the trial court refusing a new trial on the ground of insufficient evidence, even though there be conflicts in the evidence, unless the preponderance is such that the jury must have been improperly influenced to render such verdict.

Writ of Error to the Circuit Court for Calhoun county.

The facts in the case are stated in the opinion.

*Calhoun & Hines*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

CARTER, J.:

At the last term of the Circuit Court of Calhoun county, the plaintiff in error was tried for the murder of one Tom Smith, alleged to have been committed in that county on April 5, 1896. He was found guilty of murder in the first degree, and sentenced to death, and we are now asked to reverse this judgment, because it is insisted the Circuit Court should have granted a new trial upon the ground that the evidence was insufficient to sustain the verdict.

Only three witnesses were examined upon the trial. J. L. Moody, for the State, testified that on April 5, 1896, he was sitting on his front porch in Calhoun county, making settlements with his workmen, and observed the deceased and one Tom House, in a heated quarrel about a quarter-dollar. He could not hear all that was said, but did hear House say he would

put down a quarter if deceased would pick it up, and deceased replied that he would pick it up. House put a quarter upon a small table standing between him and deceased. Deceased leaned forward and extended his hand to pick it up, and as he did so House presented a pistol and fired at him, but missed him, the ball passing over the head of the deceased. Deceased then presented his pistol and fired at House, striking him in the breast. While deceased and House were quarreling, and just before any shooting was done, witness saw defendant with a gun in his hands going towards them and when he got within fifteen steps of them, being behind deceased, he stopped and watched the two men engaged in the difficulty. House and deceased fired in quick succession, and immediately afterward defendant raised his gun and shot deceased in the back, killing him instantly, and defendant fled through the woods. House, when shot by deceased, turned and walked about fifteen steps, and then came back to deceased's body and fired two or three times at it, then pitched forward and fell dead within a few feet of the body. The wounds inflicted by defendant upon deceased were four in number, penetrating the left side of the back just above the left hip, and ranged upward, protruding from the right breast, causing death. Witness was about sixty-five yards distant from the participants at the time of the homicide.

J. D. Moody testified substantially the same as the previous witness, and, in addition, that when House and deceased were quarreling, defendant came out of a tent about fifty yards distant, with a musket in his hands; that he walked around the tent and came up in the rear of deceased, stopping about fifteen steps

from him; that immediately after deceased fired at House, defendant fired at deceased, killing him instantly; that defendant ran off but was caught and brought back.

Defendant testified that the difficulty between House and deceased occurred over a quarter which deceased claimed witness owed him. Defendant told deceased he had no money of his own, but had some belonging to his brother-in-law (House). House told deceased he would put a quarter on a stump for him if deceased would pick it up; and as deceased stooped to pick it up, House shot over his head, and deceased then shot House in the breast and killed him, remarking that he had "killed one s— of a b——h, and G–d d—n them, I will kill the other one." Deceased then attempted to whirl around and shoot defendant, who was standing with gun in hand, and as soon as defendant saw deceased begin to turn witn a loaded pistol in hand, saying "I have killed one s— af a b——h, and will kill the other one," he knowing that deceased would kill him next, shot deceased in the side. Defendant ran because he was afraid of the crowd coming on him. Defendant lived half a mile from the place of the shooting. Defendant shot deceased to save his own life, knowing deceased would kill him if he did not shoot.

We have no original jurisdiction to set aside verdicts and grant new trials because of insufficient evidence to sustain such verdicts. We act only upon a ruling of the lower court refusing a new trial upon that ground, where such ruling is erroneous, and in determining this question we look to the evidence upon which the verdict of the jury, and the ruling of the court below, are predicated. If there is evidence

legally sufficient to support the verdict, and this verdict has been approved by the presiding judge, we have no right to disturb it, though there be conflicts in the evidence; unless the preponderance is such that the jury must have been improperly influenced to render the verdict. Schultz vs. Pacific Insurance Co., 14 Fla. 73; Doyle vs. State, 39 Fla. 155, 22 South. Rep. 272. If the evidence in this case be read and considered in accordance with these principles, it will be readily perceived that we have no right to interfere with the verdict. There was abundant evidence, if believed by the jury, to justify the charge in the indictment, that defendant, from a premeditated design, unlawfully killed the deceased. The judgment is, therefore affirmed.