Lamps v. The State of Florida—Opinion of Court.

ROSS LAMPS, PLAINTIFF IN ERROR, v. THE STATE OF FLORI-
DA, DEFENDANT IN ERROR.

1. Where there is evidence legally sufficient to support a ver-
   dict this court will not reverse a ruling of the trial court
   refusing a new trial on the ground of insufficient evidence,
   even though there be conflict in the evidence, unless the
   preponderance is such that the jury must have been im-
   properly influenced to render such verdict.

2. Evidence examined and reviewed and found to be sufficient
   to support a verdict of guilty.

This case was decided by Division B.

Writ of Error to the Criminal  Court of Record  for
Orange County.

The facts in the case are stated in the  opinion  of  the
Court.

*C. G. Butt,* for Plaintiff in Error.

*W. H. Ellis,* Attorney-General, for the State.

PARKHILL, J.  On the 11th day of July, A. D. 1905,
the County Solicitor in and for Orange county filed an
information in the Criminal Court of  Record of  that
county against the plaintiff in error, Ross Lamps, who
will hereafter be called the defendant.

The defendant was charged with the crime of break-
ing and entering in the night time the dwelling house of
one Mrs. J. K. Duke with intent to commit a felony, to-
wit: the larceny of forty-two dollars belonging to one
Miss M. Jordan.

The defendant, having been duly arraigned, plead not guilty. He was tried by a jury and convicted. He made a motion for a new trial, which was overruled, and he was sentenced by the court to be confined in the State prison for five years. From this judgment and sentence the defendant seeks relief here by writ of error.

All assignments of error have been expressly abandoned except this one: That the court erred in not setting aside the verdict and granting the defendant a new trial, for the reason that the verdict of the jury was contrary to the evidence,

The evidence showed beyond question, and it is admitted in brief of plaintiff in error, that the dwelling house of Mrs. Duke was broken and entered Sunday night, June 25, 1905, by *some one,* who committed the larceny of forty-two dollars, the property of Miss Jordan, in Orlando, Orange County, Florida.

The only question before us is whether the evidence is sufficient to sustain the verdict of the jury to the effect that the defendant is guilty of this offence. The evidence touching the guilt of the defendant may be stated briefly as follows: Miss Jordan occupied a back room up stairs in the house of Mrs. Duke. Just before Miss Jordan went to bed that Sunday night in June, she closed the blinds of a window of this room, by pulling them together, but did not "fasten the catches on the blinds." The lower window sash was raised as far up as it could go. Immediately under this window was another window which had, over the top of it, what was called by the witnesses, an "upper window sill or window coping," which projected out from the wall about four inches. The back porch did not extend across the room occupied by Miss Jordan, but the west end of this porch was not over two and a half feet from the east side of the window

of her room, as testified to by witness Kirkwood. Other witnesses estimated the distance as much as four feet. The blinds were in easy reach of the porch; and on this porch there was a water faucet, which stood out from the wall that would serve as a handhold in stepping from the porch onto this upper window coping, which was about four inches wide under Miss Jordan's window. Witness saw mud and foot prints on this coping on top of the first story window, and mud on end of porch and on back steps. On Sunday night, Miss Jordan put forty-two dollars in a satchel, and put the satchel on the table in the room. The next morning the satchel was found on the floor "right by the window," but her money was not there. Miss Jordan reported the loss of her money to Mrs. Duke and then to C. R. Carter, the marshal of Orlando, the next morning, Monday. The winter before the month of June, 1905, the defendant was employed by Mrs. Duke "to wait on the table, and do work about the house" from which Miss Jordan's money was stolen. He had an opportunity to become familiar with the rooms there and "knew all the house." The defendant was seen by W. H. Smith that Sunday night to turn "the corner at Benedict's in Orlando. The defendant was going south. "He would have had to turn again to get up there," (where Mrs. Duke lived), "but he was near her house." This was a "little bit after seven o'clock." It was "about dusk, about good dusk." Miss Jordan was a telegraph operator who had come to Orlando from Moultrie, Georgia. The money which was stolen from her, she had brought with her from Moultrie, Georgia. This money consisted of currency, one twenty dollar bill, four five dollar bills and two one dollar bills. Carter, the marshal, produced in court on the trial a twenty dollar bill, and three five dollar bills in currency, and testi-

fied that these bills had been taken from the defendant on Wednesday following the Sunday night of June 25th, 1905, as will be stated hereafter. The same bills which were produced in court by the marshal were exhibited to Miss Jordan in the court room while she was testifying as a witness. These bills which were exhibited to Miss Jordan on the trial were currency, one twenty dollar Dawson County, Georgia, bank bill, and three five dollar bills. Miss Jordan testified that she believed the twenty dollar bill exhibited to her on the trial to be her twenty dollar bill; that it was a new bill like hers was, and that this twenty dollar bill exhibited to her on the trial looked exactly like the twenty dollar bill she brought from Georgia and which was stolen form her Sunday night, June 25th. She was asked if she "observed that these big figures were on yours? (Indicating figures on twenty dollar note.)" She answered "yes, I noticed that one." She could not tell whether the five dollar bills were her bills, but testified that she was satisfied "at a glance" that all this money which Carter, the marshal, showed her was her money.

Carter testified: "Upon that information I began to watch for what was going on among certain classes, and I found in the pool room one fellow playing there, and I went back that evening and I found him still playing pool. The next day I went back and he was still in there playing pool; that was on Tuesday; and on Wednesday I went back again and he was still playing, and I stopped then outside the pool room, in a little alley and waited for him to come out. It was about two minutes before he came out; several of them came along at the time, and when Ross (the defendant) got opposite me I grabbed him by the collar and from behind. He struggled to get away from me, and finally I had to pull my

club and told him I would hit him if he didn't mind. I found a twenty dollar bill and three fives in his hip pocket." In answer to a question by the marshal the defendant said he was at home Sunday night and that he had been saving up this money. "He (the defendant) had been playing pool more that week than I ever knew him to; occasionally I had seen him in there playing, but not often. I knew he couldn't afford it, because I knew the week before he didn't work, he said it was too hot to work."

A. B. Brooks who managed the pool room for Metcalf, testified that on the evening before the defendant was arrested "he pulled out a one dollar bill, and he had some more greenbacks." Brooks gave the defendant change for the bill.

W. E. Gore testified that the defendant owed him six dollars for a year and a half or two years, and that the defendant worked for him from April to June 10th, 1905, during which time Gore deducted the six dollars from the wages of the defendant. Gore said: "I would take out just a little all the time so he would have something left and the last week he asked me: 'Don't take it all out, that's a little hard on me.' "

The defendent did not testify in his own behalf.

The defendant's evidence is stated in the brief of plaintiff in error as follows: "The defendant showed by Waters Howe that in the winter or spring he brought small money into the bank and had it changed into a large bill. The testimony of Mrs. J. K. Duke was that during the winter she paid him four dollars a week and for two weeks five dollars and that the boarders gave him tips besides. The witness Harper testified that the defendant worked for him from September until December, 1904, and during that time he paid the defendant fifty-seven

dollars and sixty cents. The witness, Ed. Walker, testi-
fied that he saw the defendant with a roll of greenbacks
just after he had finished working for Mrs. Duke."

When there is evidence legally sufficient to support a
verdict this court will not reverse a ruling of the trial
court refusing a new trial on the ground of insufficient
evidence, even though there be conflicts in the evidence,
unless the preponderance is such that the jury must
have been improperly influenced to render verdict. Har-
rison v. State, 39 Fla. 514, 22 South. Rep. 747; Doyle v.
State, 39 Fla. 155, 22 South. Rep. 272; Teal v. State, 43
Fla. 580, 31 South. Rep. 282; Green v. State, 17 Fla. 669;
Dickens v. State, 50 Fla. 17, 38 South. Rep. 909.

In the case we are considering there is no conflict in
the evidence on the main points of the case. There is no
doubt, no denial, that thirty-six dollars, one twenty dol-
lar bill and three five dollar bills and one one dollar were
traced to the possession of the defendant "soon after"
Miss Jordan's forty-two dollars were stolen. If the jury
were satisfied beyond a reasonable doubt that this money
found in the possession of defendant, or any part of it,
was Miss Jordan's money, then the jury could infer from
that fact that the defendant stole the money, unless he
gave a reasonable and credible account of how he came
into possession of it. Neither the defendant, nor his
witnesses gave any account of how he came to have the
particular bills traced to his possession; but, in a gen-
eral way, left the jury to infer that this sum of money
was the accumulation of months, or years.

We think the evidence of the defendant's possession of
the money, his presence near the house of Mrs. Duke the
night of the commission of the crime, his attempt to
flee when he was arrested, his knowledge of the arrange-
ment of the house, room and porch, taken together with

the insufficiency of his explanation of his possession of the money is legally sufficient, if believed by the jury to be true, to support the verdict of the jury. There are other matters, apparent in the record, which tend to show the guilt of the defendant. What we have said is enough. We know, too, that the court and jury had the advantage of hearing the spoken testimony of the witnesses and of observing, with the *eye,* the *demeanor* and *conduct* of the witnesses while testifying, and of *seeing* and knowing much that would aid them in arriving at the truth, which we cannot gather from the pages of a written record, read while we sit here, within these quiet walls, far removed from the stirring scenes enacted in the court room.

The defendant was ably defended and had a fair and impartial trial by a competent jury and a learned judge. We can not disturb the verdict of this jury or overrule the action of this judge on the testimony as we read it.

Judgment affirmed.

TAYLOR and HOCKER, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.