J. R. SAUNDERS, *Plaintiff in Error,* v. S. G. COLLINS, *Defendant in Error.*

1. In an action of trespass it is not incumbent on the plaintiff claiming title by tax deed to show a legal assessment of the land, nor a legal advertisement of sale, nor a valid sale of said land for non-payment of taxes in order to read the deed in evidence of his right thereunder.

2. In an action of trespass where the plaintiff claims title from the State by a tax deed which shows that the State purchased the *locus in quo* at tax sale and sold the same to the plaintiffs for the sum of eleven and 30-100 dollars, the amount paid for the tax certificates, and the deed further shows that the tax certificate was produced and surrendered to the Clerk of the Circuit Court who executed the deed, it is unnecessary for the plaintiff to prove that the said certificate was assigned by the State. It sufficiently appeared that the grantees named in the deed were holders of the tax certificate, had paid for and surrendered the same to the State and were entitled to and received the deed for the land embraced in the tax certificate.

3. Evidence examined and found insufficient to sustain a verdict for damages in an action of trespass.

This case was decided by Division B.

Writ of Error to the Circuit Court for Santa Rosa County.

The facts in the case are stated in the opinion of the court.

*Smithwick & West,* for plaintiff in error.

*J. T. Wiggins,* for defendant in error.

PARKHILL, J.—The defendant in error sued the plaintiff in error in the Circuit Court for Santa Rosa County in an action for trespass. The declaration is as follows: "The plaintiff S. G. Collins, sues the defendant, J. R. Saunders, trading and doing business as the Santa Rosa Turpentine Company, for that prior to the institution of this suit, to-wit: on the 11th day of September, A. D. 1907, and within three years next prior to the institution of this suit, the defendant with force and arms, broke and entered the plaintiff's close, to-wit: The North half of the Northwest quarter of Section Twenty-two, Township Four, North of Range Twenty-seven West, in the County of Santa Rosa and State of Florida, and did then and there box the pine trees thereon for the turpentine, by cutting deep boxes in said trees, and cutting streaks on said trees, and causing the turpentine to run from said trees into said boxes, and did then and there dip a large quantity of crude turpentine from said boxes in said trees, and haul the same from the land of plaintiff as. aforesaid, with wagons and teams, with heavy loads cutting and ditching said land with said wagons; that the plaintiff by reason of the defendant boxing said trees as. aforesaid, has been damaged in a large sum by reason of the loss of said turpentine, and having said trees boxed causing the said trees to be more subject to fires, winds and other casualty.

Whereupon plaintiff sues and claims damages in the sum of five hundred ($500.00) dollars."

The defendant filed three pleas; the plea of not guilty, and that the property alleged to have been converted was not the property of the plaintiff, and that the plaintiff was not in possession or entitled to possession of said property.

At the conclusion of the evidence in the trial of the issues involved, the court instructed the jury to find a verdict in favor of the plaintiff. Accordingly a verdict for Three Hundred and Sixty-three ($363.00) Dollars was rendered, judgment was entered, and the defendant sued out a writ of error.

The first, second and third assignments of error may be considered together.

The plaintiff rested his title to the lands described in the declaration on a deed from D. M. Sullivan and wife, dated the 23rd day of July, A. D. 1904, and on a tax deed to Mrs. Sullivan executed by L. P. Golson, Clerk of the Circuit Court for Santa Rosa County, on the 8th day of March, 1904, purporting to be executed in pursuance of a sale of the lands described in the declaration, on the 2nd day of December, 1901, for the non-payment of the taxes for the year A. D. 1900, as the property of The Creary Mercantile Company.

The defendant objected to the introduction in evidence of the tax deed on the grounds: 1. That no legal assessment of the land described in the deed had been shown. 2. That no proper legal notice or advertisement of sale of the land described in said deed had been shown. 3. That no proper legal sale of said land because of failure to pay taxes thereon had been shown.

The judge overruled said objections and plaintiff assigns error thereon.

It was not incumbent on the plaintiff to show a legal assessment of the land, nor a legal advertisement of sale, nor a valid sale of said land for non-payment of taxes, in order to read the deed in evidence of his right thereunder. The deed was made *prima facie* evidence of the regularity of all these proceedings by Section 60, Chapter 4322, Acts of 1895, in force at the time of the sale of the land, and by Section 1, of Chapter 5113, Acts of 1903, in force at the time of the execution of said deed and at the time of the trial of this case. There was no error in this ruling of the court, and what we have said here disposes of the objections made to the deed from Sullivan to the plaintiff and to the contention that the court erred in refusing to give the affirmative charge in favor of the defendant because the tax deed was void.

Afterwards the defendant produced L. P. Golson, Clerk of the Circuit Court for Santa Rosa County since the year 1900. The testimony of the witness, including a notation evidently made by the stenographer, appears in the bill of exceptions set out in the transcript as follows: "I recorded a copy of the advertisement of the tax sale for the year 1901, for taxes for year 1900. I will produce the record of that advertisement." Note: Witness produces the record of the report of sale made by the tax collector, afterwards offered in evidence.

This is the only record in my office of the advertisement of the sale or the report of the sale after it was made. The whole of Section 22, Township 4 North, Range 27 West, except the S. W. ¼ of S. E. ¼ was sold to the State. This record is the only record concerning the sale in my office." The bill of exceptions then proceeds to recite: "And the said defendant further to maintain the issues on his behalf then and there produced in evidence the following record of the tax sale

for the year 1901 referred to by the witness L. P. Golson."

Counsel for plaintiff in error contend that the record of tax sale shows that the land in question was sold to the State and the tax deed made to Sullivan and Collins, and that there is no proof of a transfer or assignment of the tax certificate upon which the deed was based; and that, therefore, the *prima facies* of the deed have been overcome; and the plaintiff having failed to prove a transfer of an assignment by the State of said tax certificate, the court erred in admitting the deed in evidence.

The record introduced by the defendant shows that six hundred acres in Section 22, Township 4, North of Range 27 West, embracing the *locus in quo,* were assessed for taxes as the property of the Creary Mercantile Company and sold to the State, the tax certificate being number seven. The other entries on this record are by no means clear; but we think it shows that Mrs. F. B. Sullivan and S. G. Collins purchased the N. ½ of N. W. ¼ of said Section 22, that being the property involved here, and it appears, from said record, that this property was deeded to them as of the 8th day of March, 1904, and recorded in deed book No. 1 page 16.

Section 10, of Chapter 4888, Laws of Florida, as amended by Section 1 of Chapter 5113, Acts of 1903, provides: "The holder of any tax certificate at any time after the date of its issue, may obtain a tax deed to the land therein described by application to the Clerk of the Circuit Court of the County wherein such land is situated as provided in this act, and the surrender of such certificate and the payment to the clerk of the proper amount for the redemption or surrender of all other outstanding certificates covering said lands, * * * and a fee of one dollar for the issue of the deed and ten cents

for each additional description of land embraced in any one deed, which deed shall be *prima facie* evidence of the regularity of the proceedings from the reduction (valuation) of the land by the assessor to the date of the deed inclusive."

The tax deed put in evidence by the plaintiffs herein, covering the *locus in quo,* is executed by L. P. Golson, Clerk of the Circuit Court of Sata Rosa County, "for and on behalf of the State of Florida," and recites, "That whereas, Mrs. F. B. Sullivan and S. G. Collins has this day applied for a tax deed to the land herein described, *and has produced and surrendered* to the undersigned, clerk of the circuit court for the county aforesaid, *Tax Certificate No. 7* from which it appears that the said land was sold by the tax collector of said county on the 2nd day of December, A. D. 1901, for the unpaid taxes for the year A. D. 1900, as the property of The Creary Mercantile Company * * *.

Now, therefore, *the State of Florida,* in consideration of the premises, *and the sum of Eleven and* 30-100 *Dollars,* the amount paid upon the certificates, and for costs and charges, * * has given, granted, bargained and sold and does hereby give, grant, bargain, sell and convey unto the said Mrs. F. B. Sullivan and S. G. Collins, their heirs and assigns forever, * * the North half of the Northwest quarter of Section twenty-two (22) in Township four (4) North of Range Twenty-seven (27) West, containing 80 acres more or less."

Noting that the State purchased said land at tax sale and sold the same land to the plaintiff for the consideration of $11.30, which was the amount paid for the certificates, and acknowledges by said deed that the tax certificate No. 7 was produced and surrendered to the Clerk of the Court aforesaid, it is entirely unnecessary for

the plaintiff to prove that the said certificate was assigned by the State. There was sufficient evidence here that the grantees named in the deed were "holders" of the tax certificate, had paid for and surrendered the same to the State of Florida and were entitled to, and received, a deed for the land embraced in that certificate. The court did not err in its ruling on this point.

What we have already said disposes of the fourth assignment of error.

The fifth assignment of error is based upon the denial by the court of the motion for new trial. The only question presented by this motion that remains to be considered is the sufficiency of the evidence to support the verdict.

Only one witness, C. T. Cross, testified in this case for the plaintiff. We give his testimony in full just as it appears, word for word, in the bill of exceptions, as follows:

"My name is C. T. Cross. I am engaged in the turpentine business working for Mr. J. R. Saunders in this county. I am familiar with Section 22, Township 4 North, Range 27 West, but am not familiar with the north half of the northwest quarter of this section in particular. I am acquainted with the whole section. We boxed all of it less one forty. I know where this forty is, but could not describe it. I think it is in the southeast quarter, but I don't know. We boxed it in the first of February, possibly January. This forty acres that was not boxed is not in the northwest quarter of the section. We have worked it two seasons. I did not count the boxes, and I do not know how many we cut on this section. I could not tell how much crude gum can be manufactured or put in barrels on eighty acres of that kind of timber unless I knew how many boxes

we cut. It would depend on the number of boxes. I could tell how much if I could tell the number of boxes, but I don't know how to get at it unless I could tell how many boxes there were. I think there could be cut fifteen or sixteen hundred boxes on eighty acres in this kind of timber on this eighty. I could not tell because I am not familiar with the eighty. We ought to dip the boxes the first season six or seven times, but it depends upon the quantity of labor you have. If the boxes were good you could get four and a half barrels each time, but these boxes are not very good ones, though. This crude turpentine would be worth in barrels in the woods, I suppose $4.50 per barrel. I guess that would be about right. I could not tell without giving it some study.

The land is not worth as much after it is boxed for turpentine as before. I could not tell the difference unless I knew how many boxes there are on the land. The timber is more subject to destruction from fire and wind unless it is protected from fire.

### Cross Examination:

I do not know the location of this eighty acres of land. I know where the section is and where this eighty is in a general way. I think eighty acres of that kind of land would cut about fifteen or sixteen hundred boxes. The timber is scattered, * * a very poor class of timber. It is customary to dip boxes the first year seven times, but I don't know how many times the boxes on this particular piece were dipped, I have no idea. I do not know the amount taken from it the second season. I do not know how many times the boxes were dipped. We dipped it as many times as the rest of the boxes."

This was the only testimony on the question of damages. The testimony of the only witness for the defend-

ant, L. P. Golson, has already been referred to.

A verdict that has been approved by the presiding judge should not be set aside on writ of error, if there is evidence legally sufficient to support it, though there be conflicts in it, unless the preponderance is such that the jury must have been improperly influenced to render such verdict. Harrison v. State, 39 Fla. 514, 22 South. Rep. 747; Schultz v. Pacific Insurance Co., 14 Fla. 73.

This court is always reluctant to disturb the verdict of a jury; but where the verdict is unsupported by the evidence, it should be reversed.

Passing the question whether the evidence is sufficient to prove a trespass *by the defendant* upon the property involved here, and conceding that fact to have been proven, we do not find the evidence in the testimony of Mr. Cross sufficiently clear and certain to sustain an award of $363.00 dollars for damages to the land and the value of the turpentine gum taken from the land by the defendant.

Let us see if we can find out from the evidence what is the value of the turpentine gum taken from the land. The culmination of Mr. Cross' uncertain testimony as to the number of boxes cut on the plaintiff's land is found in this statement on his cross examination: "I think eighty acres of that kind of land *would cut* about fifteen or sixteen hundred boxes." Although the witness never did say how many boxes *were cut* on this land, let us say, for the purpose we have in mind, that the defendant is answerable for the turpentine taken from *sixteen hundred boxes,* to be most liberal towards this verdict.

Now does the evidence show how many barrels were taken from these boxes? The witness says: "*We ought* to dip the boxes *the first season* six or seven times, *but*

*it depends upon the quantity of labor you have. If the boxes were good, you could* get four and a half barrels each time, *but these boxes are not very good ones,* though." The witness says *they ought* to dip the boxes six or seven times the first season, but he does not tell us how many times they in fact dipped the boxes, and on his cross examination, he told the jury: "I do not know how many times the boxes were dipped. We dipped it as many times as the rest of the boxes." For the purpose we have in mind, let us be liberal towards the verdict and conclude that the defendant dipped the boxes *seven times* the first season. Without being able to say whether these boxes were good enough to produce four and a half barrels of crude turpentine, and though the witness says the boxes were not very good ones, let us be liberal again, and charge the defendant with four and a half barrels.

Although the witness supposes and guesses about the value of a barrel of crude turpentine, and says he could not tell without giving it some study, let us assume with him that it was worth $4.50, in pursuance of our policy of great liberality in dealing with this verdict and the evidence in support of it. Then the calculation would be: 7x4½x$4.50 equals $141.75, as the value of the turpentine for the first season. The witness said: "I do not know the amount taken from it the second season." The jury were left to conjecture whether the output of the second season was as valuable as that of the first season, and, on this matter, we are completely in the air. The witness doubtless could have given the jury some idea about it. He could have said whether the second season was about as good as the first. But he does not even suppose, or think, or guess about the output of the second season. There is nothing in the testimony of the witness from which we may conclude that the value of

the turpentine taken from this land the second season was the same as that taken the first season. There was evidently some difference in the amount of turpentine taken from these boxes during the first and second seasons for the witness said: "We ought to dip the boxes the first season six or seven times, but it depends upon the quantity of labor you have."

On the question of how much the land was damaged by the trespass here complained of, the evidence is wholly deficient. The witness testified: "The land is not worth as much after it is boxed as before. *I could not tell the difference* unless I knew how many boxes there are on the land. The timber is more subject to destruction from fire and wind unless it is protected from fire." The land is undoubtedly not worth as much after the trees are boxed as before; but the witness does not tell us the extent of this difference. Undoubtedly the timber is more subject to destruction by fire and wind, after it is boxed, but the witness ought to have given the jury some data from which they could estimate in dollars and cents how much the plaintiff has suffered by reason of his timber being more subject to destruction from fire and wind, since the boxing of the trees by the defendant. The jury could not tell how much money to take from the pocket of the defendant and put into the pocket of the plaintiff to compensate him for the decrease in the value of his land caused by the trespass therein complained of unless the plaintiff furnish information thereof to the jury.

We can find a basis for an award of only $141.75, taking the testimony most favorably for the plaintiff. Before we assist in taking money from one man and giving it to another in a case like this we must know how much the latter is entitled to receive. Not being

able to see from the evidence before us that the plaintiff has suffered a damage to the amount named in the verdict, the judgment is reversed.

TAYLOR and HOCKER, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.