Enoch Carter v. The State of Florida—Syllabus.

ENOCH CARTER, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Whether a homicide was perpetrated with a premeditated design to effect the death of the person killed or not, is a question for the jury to determine from the evidence.

2. The law does not prescribe what length of time should elapse between the formation of the design to kill and its execution, to constitute premeditation. It is sufficient if there was a fully formed purpose to kill with enough time for thought, to convince the jury that the mind of the prisoner had become fully conscious of its own design.

3. An instruction asked which is based upon the assumption that material facts are proved, is improper and should be refused by the court.

4. The court, after charging as to the different grades of homicide and the requisite evidence to support them, is not bound to repeat the same charge in substance though varied in terms.

5. It is no defence that the prisoner had not been informed that the police of a city were instructed to execute one of the city ordinances, such ordinance being in force.

6. If the record is silent as to whether a presiding judge pronounced to a jury a charge as given or refused, this court will presume that such instruction was pronounced as the statute requires.

7. The following language written at the foot of an instruction asked, "Refused as it charges on the evidence.  E. K. Foster, Judge Seventh Judicial Circuit;" "To which ruling of the court the defendant then and there excepted.  E. K. Foster, Judge Seventh Judicial Circuit [L. S.]," is a sufficient signing and sealing under section 3, chapter 3096, acts 1877.

Writ of Error to the Circuit Court for Orange county.

MR. JUSTICE RANEY did not sit in this case.

The facts of the case are stated in the opinion.

*W. R. Anno* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court:

Enoch Carter was indicted and convicted in the Circuit Court of Orange county for the murder of L. D. Beasly. It appears from the evidence that the deceased was a policeman in the city of Orlando, and that at the time of his death he was acting as such; that in pursuance of an ordinance of said city, which prohibited all persons from standing on or obstructing the sidewalks of the city, he ordered the prisoner who was standing thereon to move on or get off of the walk. The prisoner refused and the deceased struck or punched him with his club, whereupon the prisoner went into a barroom before which he had been standing, making threats, and returned with his hand in his pocket, a fight ensued in which the deceased was shot and killed.

The jury returned a verdict of guilty of murder in the first degree. Prisoner moved the court for a new trial on the following grounds:

1st. That the verdict is not sustained by the testimony for State.

3d. That the verdict is contrary to the charge of the court.

4th. That the court erred in refusing the fourth instruction requested by counsel for defendant to be given to the jury.

5th. That the court erred in refusing the fifth instruction requested by defendant's counsel to be given to the jury.

The court overruled the motion.

The evidence introduced, which it is necessary to notice for the purpose of this opinion, is as follows:

One Hansford Dann, witness for State, testified as follows: " I was walking on the street, coming from the south this way down to the jewelry shop. I got in good hearing distance, and Beasly was talking with this man, and he told him in these words : He says, I have told you before to go away from here, and he says if you don't I will have to carry you away. He put his hand against his shoulder shoving him back about two steps ; this man shook his fist at Beasly, and made the remark that no damn man could put him in any place. Mr. Beasly then remarked again and says if you don't go away I will have to put you away. Just about the time he was uttering the words he swung his cudgel around in this way (indicating) striking this man a crack on the left side about the elbow. He then, this man Carter, told Beasly that if he touched him again he would hurt him, damn him. Beasly hit again in about the same manner across the left side of the head in the way that he motioned the cudgel that he had in his hands. He swung it right up in this way (indicating) striking him on the left side of the head. The man, before he did the shooting, run back, with his hand in his right pants pocket, about ten feet, and facing Beasly jerked his hand from his pocket. Beasly jumped right from the edge of the side walk out to the ground and this man fired on him."

One T. A. Weymouth, witness for the State, testified as follows : " As I came around the corner by Birnbaum's dry goods and clothing store I passed Mr. Beasly and Mr. Jenkins standing near the fruit stand. I passed on and Mr. Beasly fell in behind me, about fifteen feet distance. I passed on until I came to the crossing that crosses the street in front of the further saloon door or near it. I stood on the sidewalk leaning against one of the posts. While I stood there Mr. Beasly came down the walk and

spoke to a negro standing or leaning against the saloon door. He asked him to move on out of the way, and says, I have had trouble enough with you. The negro refused to go, saying I will be damned if I will. He told him to go and to be gone when he, Mr. Beasly, came back. Mr. Beasly passed on down in front of the furniture store. He stopped a moment, perhaps one minute, and came slowly back on the sidewalk. Whilst he was gone a negro came out of the saloon and began to talk with the negro that stood there formerly. They talked about the policeman telling him to move on, and the latter negro said I would not go."

Q. "Who was the other negro that said I would not go?"

A. "He was the prisoner at the bar. He says damn him, I would not go. If he told me to I would take his club away from him and beat him. Mr. Beasly came along and spoke to the negro that he spoke to the first time, and says I told you to be gone. He made some reply, but I did not understand it. The latter negro was standing near him then, (the prisoner). He says to Mr. Beasly, standing in front of Mr. Beasly, I wouldn't go if you told me to. Mr. Beasly told him to move out of the way. He refused him, uttering an oath. Mr. Beasly had his club in his right hand; he took it and gave him a punch on the pit of the stomach, or near there. The negro says damn you, you can't do that to me, and turning around he says I will fix you, and ran into the saloon. Mr. Beasly walked up to the door, looked in for a moment, and started down towards Church street a few steps, turning around so as to be facing the prisoner when he came out. In a moment the prisoner returned, and stepping up to Mr. Beasly, with his right hand in his right pocket, shook his left hand forefinger in Mr. Beasly's face and says, I am ready for you now, you dare not touch me. Mr. Beasly took hold of the negro's left arm with his left hand, and pushing him towards the

saloon door told him to go. He refused, uttering an oath. I don't recollect it. Mr. Beasly says you will come with me; he refused, Mr. Beasly having hold of his left arm. Mr. Beasly raised his club and struck the prisoner on the left arm. He raised it again and struck at the prisoner's head. The prisoner dodged and warded off a part of the blow with his left arm. Mr. Beasly lost his hold. The prisoner stepped about four steps back from Mr. Beasly, so he was standing at the time about four feet distance with his arm over his head in this shape, (indicating) slightly inclined to the right side. As he stepped back he drew his hand from his pocket in which he had a revolver, and without taking aim, any more than as he pulled in that shape, (indicating) he fired at Mr. Beasly. Mr. Beasly was standing near the side of the walk. As he fired he raised his left hand about so much (indicating); he says Oh God! He swung around facing the saloon, and started towards it. He took about three or four steps and sank down. I went up to Mr. Beasly, and we looked for the wound and found it on the left breast."

One Henry Holloway, witness for State, testified as follows: "Mr. Beasly shook his club and said move away, I spoke to you awhile ago; this Enoch Carter, the accused, was standing with one foot on the sidewalk, and the other in the doorway; he replied to Mr. Beasly, damn you, we are on the sidewalk. Mr. Beasly replied: It makes no difference, I said move; the accused, Enoch Carter, replied I will be damned if I do it. Mr. Beasly placed his club about there on his breast (indicating) of the accused, and punched him, saying go away when I tell you. The accused turned and entered the bar and says damn you, you can't treat me that way; went into the bar; was gone a minute and a half, I suppose; when he returned, stepped out on the sidewalk, shook his left forefinger in Mr. Beas-

ly's face, and says damn you, try that again; Mr. Beasly put his left hand against him and pushed him, saying go off the sidewalk, on the street, I dont care to muss with you; when Mr. Beasly pushed him he gave back, placing his right hand in his pocket says, I be damned if I do it; Mr. Beasly advanced on him a step or two and says, take your hand out of your pocket or I will club you and lock you up. The accused says damn you, undertake it; Mr. Beasly swung his club around, and as he did the defendant throwed up his left arm and gave back a step or two, as he did so pulling his right hand from his pocket holding a revolver about that position (indicating), and fired; Mr. Beasly turned, looked me in the face and says, the best I understood, Lord have mercy on me! I could not state what furthermore happened to Mr. Beasly, as I joined the pursuit after the defendant."

And the State, in order to further maintain the cause in its behalf, offered and had read to the jury as evidence in that behalf, the following ordinance of the city of Orlando, which is in words and figures following, to-wit:

"Sec. 20. Be it further ordained, that any person or persons who shall stand or gather on any sidewalk in the city of Orlando in such a manner as to obstruct the passage of persons along such sidewalk, shall, upon conviction, be fined in the sum of five dollars or be imprisoned in the calaboose for five days at hard labor."

Counsel for prisoner insists that there was no proof of premeditation, and that the time intervening between the commencement of the altercation between the deceased and prisoner, and the killing of the deceased by the prisoner, was too short to allow of the prisoner's forming a design to effect the death of the deceased. The law does not prescribe what length of time should intervene between the formation of the design by one to effect the death of

another, and the execution of such design. It would indeed be impracticable to do so. All it requires is that there be such an interval of time between the intent and the act as will repel the presumption that it was done upon a sudden impulse conceived and executed almost instantaneously, or that its execution followed so quickly after the design as to show that the mind was not fully conscious of its own intention.

If there is an intent to kill, an interval of time after it sufficiently long for the prisoner to be fully conscious of what he intends, and then an execution of such intent, it is sufficient to convict the prisoner of murder in the first degree. These are all questions of fact for the jury, to be determined by them from all the facts and circumstances of the case. Drum's case, 58 Penn. St., 16 ; Savage & James vs. State. 18 Fla., 909 ; Wharton's Criminal Law, vol. 1, sec. 116.

From the evidence above set forth, we think the jury were justified in finding the verdict they did.

The next error assigned is that the court erred in refusing to give to the jury the following instruction asked for by the prisoner's counsel: "If you find, from the evidence, that before the blows were inflicted by the deceased on the prisoner that there was no design to kill the deceased, and that the prisoner fired at and upon the deceased in the heat of passion, the passion being aroused by the infliction of the blows as testified to, then he is not guilty of the charge as laid down in the indictment and you may, if the evidence warrants it, find him guilty of manslaughter in the third degree." There was no error in refusing this charge. It assumes that certain facts were proved and if given would have withdrawn from the jury the right to determine the truth of those facts. It is objectionable in

this respect by assuming as admitted that blows were inflicted by the deceased on the prisoner.

The court was also justified in refusing the charge for the reason that in the charge delivered the court had fully instructed the jury as to manslaughter in the third degree, and in the next special instruction asked by prisoner's counsel, which was given, the prisoner had the full benefit of the principle for which he contended. Gladden vs. State, 12 Fla., 562.

The next error assigned is the refusal of the court to give to the jury instruction No. 5, which was as follows: "If you find from the evidence that a special and limited order had been given to the police of the city of Orlando to keep the sidewalks clear of crowds obstructing them, and the order had not been promulgated to bring it home to the knowledge of the public, including the prisoner, then the deceased, as a policeman, was not justified in punching the prisoner with the police club in the stomach and otherwise inflicting blows upon him."

There was no error in refusing to give this instruction to the jury. It would imply that notwithstanding the ordinance preventing the obstructing of streets by persons standing on them, that the police had no authority to execute it unless they had special instructions from the city authorities, and had communicated such instructions to the prisoner. Such a proposition need not be considered.

The prisoner's counsel makes the point that the record does not show that the Judge "pronounced" the last two instructions "to the jury as given or refused," as required by the statute. Chapter 2096, acts 1877. In the silence of the record as to whether these charges were pronounced to the jury as given or refused, and in the absence of an exception taken in the court below by the prisoner's counsel for not pronouncing them, the law presumes that the Judge

did his duty and pronounced the instructions to the jury as refused. Prisoner's counsel also objects that the two instructions asked and refused, to wit: Nos. 4 and 5, were not signed and sealed as required by the statute. To the 4th one of these instructions is appended the following language: "Refused as it charges on the evidence. E. K. Foster, Judge of the 7th Judicial Circuit. To which ruling of the court the defendant then and there excepted. E. K. Foster, Judge 7th Judicial Circuit. [L. s.]" The signing and sealing of instruction 5 was substantially the same.

We think this is a sufficient compliance with the statute.

We can find no error in the record and the judgment of the Circuit Court is affirmed.