DAVE MILLER, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

### Opinion filed January 23, 1918.

Premeditation is an essential element in the crime of murder under the statutes of this State. It should be alleged in the indictment and proved beyond a reasonable doubt at the trial. The mere fact of the killing does not raise a presumption of premeditation such as makes the offense murder in the first degree and cast upon the defendant the burden of showing that it was not. Something more than mere intention to kill must be shown; it is necessary that some circumstances admissible as evidence be shown from which may be legitimately inferred the fact of premeditation.

Writ of Error to Circuit Court for DeSoto County, John S. Edwards, Judge.

Judgment reversed.

*W. D. Bell* and *George Leitner*, for Plaintiff in Error;

*Van C. Swearingen*, Attorney General, and *C. O. Andrews*, Assistant, for the State.

ELLIS, J.—The plaintiff in error was convicted of murder in the Circuit Court for DeSoto County and seeks a reversal of the judgment on writ of error.

The assignments of error present the question whether the evidence was sufficient to support the verdict of murder in the first degree, an indispensable element of which was a "premeditated design to effect the death of the person killed, or any human being."

The facts briefly stated with reference to the particular point are in substance as follows: The deceased, Henry Wiggins, who was a deputy sheriff, and a negro named Ed Matthews were on the night of November 25th, 1916, under instructions from the Sheriff, guarding Peace River bridge east of Wauchula for the purpose of capturing a negro who had killed another at "Petteway's Still" east of Wauchula, a short time before. Both men, Mr. Wiggins and Ed Matthews were armed with shot guns. Ed Matthews was the only witness who testified as to the details of the shooting. He said that he and Mr. Wiggins at about ten o'clock that night were standing at the foot of the bridge, on the Wauchula side. The witness heard someone walking on the bridge, coming from the east side, with something on his shoulder. "About that time," the witness testified, "I said, that is somebody now. I was standing just this way (indicating), and this fellow kept walking and just as he came up and he said hold up the gun fired." "Q. Who said hold up? A. Mr. Wiggins—and the gun fired. Q. Where did the gun fire from? A. From the man that was coming on the bridge. Q. How many times did he fire? A. Once. Q. What did Mr. Wiggins do? What was Mr. Wiggins doing the time the gun fired, A. He fell. Just as the gun fired the man jumped over in the big ditch at the mouth of the big bridge. Q. Could you tell who the man was? A. No Sir. Q. Do you know whether he was black or white? A. No, Sir. I couldn't tell." When the man who fired at Mr. Wiggins ran, Ed Matthews

fired four times: The account of his shooting is given in the following words: "Q. How long after that shot— I believe you said that you fired some shots? A. Yes, Sir. Q. How many? A. I shot four times. Q. How long after that? A. The first shot, I guess, was about two minutes after Mr. Wiggins fell before I fired a gun. Q. What did you fire at? A. Just fired at the man that jumped off in the ditch. Q. You think it was as much as two minutes before you did that? A. I suppose so. Q. Then you fired four times in that direction? A. Four times—twice when he first jumped and then two more."

The defendant testified that he heard no one tell him to halt; that after he had crossed the bridge some one shot at him and he "shot back that way." That he was on his way to Wauchula to tell of the "shooting" which had occurred at the mill and which on cross-examination he seemed to admit that he had done.

We think this evidence is insufficient to prove premeditation on the part of the defendant to kill Mr. Wiggins.

Premeditation is an essential element in the crime of murder in this State. In a long unbroken line of decisions this court has so held. At times there have been discussions as to what constitutes premeditation, but at no time has any doubt been expressed that the element of premeditation on the part of the accused to kill should be alleged and proved beyond a reasonable doubt. Since the case of Dukes v. State, 14 Fla. 499, this court has held that the fact of killing merely, does not raise a presumption of premeditation such as makes the offense murder in the first degree and casts upon the prisoner the burden of showing that it was not. See also Savage and James v. State, 18 Fla. 909; Ernest v. State, 20 Fla. 383; Adams v. State, 28 Fla. 511, 10 South. Rep. 106; Garner v. State, 28 Fla. 113, 9 South. Rep. 835;

Cook v. State, 46 Fla. 20, 35 South. Rep. 665; Keigans v. State, 52 Fla. 57, 41 South. Rep. 886; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251.   The language as used in the Dukes case has many times received the approval of this court: "If every homicide shall be presumed to be murder until the perpetrator show that the act is not murder, this emasculates the statute; for the design of the statute is to require that the degree or quality of crime shall be established by proofs.   The common law says the killing is murder; the statute says the unlawful killing is murder, manslaughter or not criminal at all according to the facts and circumstances.   And so it is to be ascertained from all the facts and circumstances whether any crime has been committed, and it cannot therefore be allowed that a man shall be adjudged guilty of the highest crime upon proof of only one of the ingredients, the single act of killing being but one of the ingredients of the crime.   The very terms of the classification of the different degrees of murder and manslaughter and of justifiable and excusable homicide require something more than the proof of the killing, because it cannot be determined without a consideration of all the facts and circumstances of each case whether the act be murder, manslaughter or the criminal intent be entirely wanting."

The statute referred to was the statute of 1868 upon the subject of homicide which with very slight changes not in substance is the law in this State today.   See Section 3205 General Statutes, 1906, Florida Compiled Laws, 1914.

In the case of Cook v. State, *supra,* the court was divided on a charge given by the trial court defining premeditated design.   The charge given was the following   "No specific time is required to constitute premedi-

tation. If the mind of the accused was in a condition to form a purpose, and there was sufficient time for the forming of that purpose, and for the mind to be conscious of that purpose to kill, it is sufficient time to constitute premeditation; and if the jury believe from the evidence beyond a reasonable doubt, that the defendant had fully formed a purpose to shoot and kill Smith and that he was conscious of that purpose when he fired the shot they will find the defendant guilty of murder in the first degree." Chief Justice TAYLOR and Justices SHACKLEFORD and HOCKER thought that the charge did not afford a proper definition of premeditated design and was erroneous, while Justices CARTER, MAXWELL and COCKRELL thought it did. And in the case of Stokes v. State, 54 Fla. 109, 44 South. Rep. 759, this court said: "Premeditated design is more than an intent to kill." Mr. Justice WHITFIELD concurring said: "The phrase 'a premeditated design to effect death' means a design to effect the death that was thought upon for any length of time, however short a time, before the act which effected the death from the premeditated design. The word premeditated has reference to and is descriptive of the design that the statute makes an essential element of the crime. A premeditated design to effect the death of a human being is a design to kill a human being, which design was *thought* upon before the act that unlawfully effected the death. The killer must have thought upon the design to kill during some time however short before the fatal act." Mr. Justice COCKRELL prepared a concurring opinion in which he said: "It is admitted that design and intent are practically synonymous." If so, then premeditated design means premeditated intention. So that something more than intention

to kill is necessary to be proven to establish against one the charge of murder in the first degree.

In this .case there appears to be no evidence whatsoever of the slightest relevancy that the defendant premeditated. the design to kill the deceased, nor that he had any intention an instant before the fatal shot was fired to kill the deceased. The defendant was admittedly at a place where he had a right to be, a traveller on the public road. There is no evidence that the deceased had a warrant for the defendant's arrest, nor that the defendant knew that the deceased was an officer, nor that the deceased knew that defendant was the man whom the deceased was guarding the bridge to arrest, nor that the deceased or Matthews told the defendant that they were officers of the law. The defendant approached the bridge with his shotgun on his shoulder; it was in the night time; he was suddenly confronted by two men both armed with shotguns, and one of them told him to "hold up;" he could not tell whether they were white men or not, according to Matthews, the witness. Instantly upon being ordered to "hold up" he fired and ran. The shot happened to kill Mr. Wiggins (if that was the shot which killed him), but from what circumstances could the inference be drawn that the defendant had for any appreciable length of time deliberated upon or premeditated the intent to kill Mr. Wiggins, assuming that when the shot was fired the defendant intended to kill the deceased. It is contended that the defendant was a fugitive from justice in the sense that he was running away from another crime perpetrated by him that very night at the "still" only a short time before, from which circumstance it is inferred that he intended to kill anyone who attempted to stop him. A little reflection will convince one that the contention is more of an excuse

than a reason. In the first place there was no evidence that a crime had been committed. There was some evidence that a homicide had been committed at the "still," but whether it was murder, manslaughter, justifiable or excusable does not appear; in the second place the statement that the defendant was running away from it is purely gratuitous and made directly in the teeth of the only evidence upon the subject. But even if he was running away from a crime just committed, is it permissible in law to infer therefrom that he could not therefore, when accosted on the bridge by two unknown men armed with guns and by them told to hold up, have exercised the right to defend himself against an unlawful attack; that he might not under the circumstances have thought the attack was an unlawful one and that he shot to repel it; or that in fright he shot to make his escape? Must a man's conscience be void of offense toward God and man before he may insist upon the right of self defense, or repel an unlawful attack upon him; or resist an attempt to hold him up upon a country road in the night time by unknown men armed with shotguns?

Mr. Chief Justice FULLER of the Supreme Court of the United States in the case of Starr v. United States, 153 U. S. 614, 14 Sup. Ct. Rep. 919, expressed the view that the defendant may lawfully repel an attack upon him although made by an officer who tries to arrest him if the defendant did not know that the person trying to make the arrest was an officer. In that case a Cherokee Indian named Starr had been arrested for crime, had forfeited his bail and was fleeing from arrest. The deceased, an officer of the law, undertook to arrest the Indian who when attacked by the officer shot and killed him. Upon the question of the defendant's right to

defend himself the learned and venerable judge said: "The intrinsic rightfulness of the occupation or situation of a party, having in itself no bearing upon or connection with an assault (does not) impose a limitation on the right to repel it." That a "conscience void of offense toward God and men is not an indispensable prerequisite to justification of action in the face of imminent and deadly peril."

We think that the attempt to infer premeditation on the part of defendant of an intent to kill Wiggins, from the fact that the defendant was running away from a crime which he had a short time before committed, is unfounded in evidence and unauthorized in law, and to uphold a conviction of murder upon such evidence as was adduced in this case would be to tear down the barriers which the people in their sovereign power have raised against the passions of men for the protection of the innocent and the dignity of the law.

The judgment of the court below is reversed and a new trial directed.

BROWNE, C. J., AND TAYLOR, J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD AND WEST, J. J., dissenting.—"The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed, or any human being, · * * * . shall be murder in the first degree, and shall be punishable with death." Sec. 3205 Gen. Stats. 1906, Florida Compiled Laws, 1914.

Premeditated design, in trials for murder, may be established by *circumstantial* evidence as contradistin-

guished from positive or direct evidence. Pugh v. State, 55 Fla. 150, 45 South. Rep. 1023; Hicks v. State, 25 Fla. 535, 6 South. Rep. 441; Yates v. State, 26 Fla. 484, 7 South. Rep. 880; Roberson v. State, 45 Fla. 94, 34 South. Rep. 294; Thomas v. State, 58 Fla. 122, 51 South. Rep. 410.

There is evidence that a homicide had been committed at a "still" not far away, and that the deceased had been directed by the sheriff to guard a bridge where the perpetrator of the homicide might pass. The accused testified that he did the shooting at the still "about half an hour after dark," and that he was going to Wauchula "to tell them about some trouble, shooting, was going on out to the still—tell them the matters about it;" "I was intending to tell them about the trouble I had already been in" and that he "got down to the bridge between eight and nine o'clock—somewhere like that." The defendant did not tell any one at Wauchula of the shooting at the still or of the subsequent shooting at the bridge. He escaped. This and other evidence in the transcript, in our opinion, clearly justified a finding by the jury that the defendant while endeavoring to get away from the scene of his admitted shooting earlier in the evening, and while crossing the bridge, fatally shot the deceased pursuant to a predemitated design to kill any one who might intercept him. This would sustain a verdict of murder in the first degree.