MARK C. POWELL, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

## En Banc.

## Opinion Filed April 5, 1927.

1. Premeditation means *intent before the act*, but not necessarily existing any extended time before the act. Premeditation is proven, if from all the evidence the jury may reasonably conclude that there was a fully formed purpose to kill with enough time for thought and that the mind of the accused had become fully conscious of its own design.

2. Whether premeditated design to kill was formed by the accused must be determined by the jury from all the legal evidence and circumstances of the case.

3. Where there is a conflict in the evidence, but there is ample testimony to sustain the facts the Appellate Court will not grant a new trial on the ground that the verdict was contrary to the evidence, or to the weight of the evidence, when the verdict is in accordance with the law in the case.

4. Counsel both for the State and for the defense should confine themselves to the record in the argument of criminal, as well as civil, cases. This is a rule, however, which is often violated and it is not the policy of courts to grant new trials because of such violations, unless it appears that the passions or prejudices of a jury may have been aroused thereby or that the jury may have been misled and caused to base their verdict upon some matter outside of the evidence.

5. A new trial will not be granted on the ground that counsel made objectionable statements to the jury if the jury were cautioned by the Court to disregard them.

6. In passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject; and if when thus considered the law appears to have been fairly presented to the

jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the Court is of the opinion that such instructions or charge was calculated to confuse, mislead or prejudice the jury.

7. Where the general charge of the trial judge covered the law of self defense in such form as to enable the jury to apply the law to the facts in the case, the refusal of the trial judge to give several other instructions upon self defense is not reversible error.

A Writ of Error to the Circuit Court for Duval County; George Couper Gibbs, Judge.

Affirmed.

*Wm. A. Hallowes, Jr., & Miles W. Lewis,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for Defendant in Eerror.

BUFORD, J.—The Plaintiff in Error, Powell, was convicted in the Circuit Court of Duval County of the offense of Murder in the First Degree with a recommendation for mercy and was sentenced to serve the period of his natural life in the State Prison, from which judgment he sued out Writ of Error.

The Assignments of Error are as follows:

1.   The court erred in refusing to grant the motion of the defendant in the case, the plaintiff in error herein, set aside the verdict in this case and to grant the plaintiff in error a new trial.

2.   The court erred in refusing to grant the motion for a new trial, because and upon the ground that there is no sufficient evidence of premeditation in the case.

3.   The court erred in refusing to grant the motion of plaintiff in error to grant a new trial because, and upon the ground that the evidence in this case shows that not sufficient time had elapsed, between the fight on the East side of Main Street, Jacksonville, Florida, and the homicide on the West side of Main Street to constitute what is termed cooling time, and at the most the evidence can only support and sustain a verdict of manslaughter.

4.   The court erred in refusing to grant the motion of the plaintiff in error for a new trial, because and upon the ground that there is no evidence to support the verdict.

5.   The court erred in refusing to grant the motion of the defendant for a new trial upon the ground and because the evidence is insufficient to support the verdict.

6.   The court erred in refusing to grant the motion of the defendant for a new trial upon the ground and because the verdict is contrary to law.

7.   The court erred in refusing to grant the motion of the plaintiff in error for a new trial upon the ground and because the verdict is contrary to evidence.

8.   The court erred in admitting the evidence of Mrs. Bernard Smith as to conversation of Mr. W. T. Cowles, Sr., over telephone with a person not identified as follows:

Q.   Who was talking? A. Mr. Cowles was talking over the telephone.

Q.   Just state what Mr. Cowles said.

· To which defendant objected as follows:   This is not part of the *res gestae* in this case; it is hearsay evidence; it is not a dying declaration; it is testimony which your Honor has ruled out once before; it is irrelevant and immaterial; it is not admissible under any rule of law.   Which objection was overruled and exception noted for the defendant.

Thereupon the witness testified to the conversation as shown by the testimony.

9.   The following argument of the State Attorney was

not proper; the injury of same to the defendant was irreparable by the instruction of the court. The statement is as follows, and plaintiff in error assigns the same as error.

Mr. Durrance: Gentlemen, we can't take men's lives without cause. Throughout the years to come the vacancies caused by the hand of this man, there can be no replacing of the dead; we cannot hear a statement from the dead. His loved ones can only sigh for the touch of a vanished hand and the sound of a voice that is still. Gentlemen of the jury, that should not be condoned or excused without cause and this mother and widow, the only comfort that she can look forward to in the years to come ——. To which W. A. Hallowes, Jr. one of the defendant's attorneys, objected in the following words:

"Your Honor, I hate to interrupt counsel, but I take exception to the language of the State Attorney." Whereupon the court ruled and instructed the jury as follows:

"Yes. I do not think that counsel's statement as to the widow is proper argument and I therefore sustain the objection."

Plaintiff in error assigns the same as error and avers that the error was not cured by the instruction of the court.

The court erred in giving to the jury the following charge, to the giving of which charge defendant duly excepted:

The court further charges you, gentlemen, that where two persons engage mutually in combat, knowing that such combat might or would probably result in death or serious bodily injury, and one of the combatants kills the other to prevent death or serious bodily injury to himself, such combatant cannot plead that such killing was in self defense. In such case, there is mutual combat and both combatants are aggressors, and neither can justify the taking of the

life of the other without having honestly and bona fide declined the combat on his part and retreated.

11. The court erred in giving the jury the following charge, to which defendant excepted:

The court further instructs you that even though a person, in the first instance, intentionally brings on a difficulty his right of self defense will revive, and his action will be deemed justifiable upon the ground of self defense where he has withdrawn from the conflict, or difficulty, in good faith as far as he possibly safely could, and clearly and fairly indicated his desire for peace; and in such case if he is pursued by the other party who again brings on a difficulty and he kills him to save his own life, or avoid great bodily harm, his act is justifiable.

12. The court erred in giving to the jury the following charge, to which defendant duly excepted:

But, if a combatant, after having retreated, returns to the combat for the purpose of renewing the same and as the result of such renewal of the combat, he slays his adversary to save his own life or to avoid great bodily harm, he can not avail himself of the plea of self-defense.

13. The Court erred in refusing to give to the jury the following charge requested by the defendant, to which refusal of the Court defendant excepted and his exception was duly noted by the Court:

B. If you believe from the evidence in this case that the defendant at the time of the homicide in this case was seated in an automobile, and that the deceased, W. T. Cowles, Sr., approached him with his hand in his breast or under his coat, and that at such time said W. T. Cowles, Sr., was armed with an iron poker, and if you further believe from the evidence that the said W. T. Cowles, Sr., then and there so conducted himself towards the defendant, that the defendant as an ordinarily prudent man, that is a man of

ordinary prudence and caution, had reason to believe and did then and there believe that he, the defendant, was in danger of great personal injury or of losing his life at the hand of the said W. T. Cowles, Sr., and that the defendant did then and there so believing shoot and kill the said W. T. Cowles, Sr., you should find the defendant not guilty and acquit him.

14. The Court erred in refusing to give the following charge requested by the defendant, to which defendant duly excepted and exception was noted for the defendant:

8. The Court instructs you that when there is more than one assailant the slayer has a right to act upon the hostile demonstration of any one or all of them, and kill any one of them, if it reasonably appears to him that they are present for the purpose and acting together to take his life, or to do him serious bodily injury.

15. The Court erred in refusing to give the following charge requested by the defendant, to which defendant duly excepted and exception was noted for the defendant:

9. The Court instructs the jury that a homicide is justifiable under the law of Florida, when committed under a reasonable apprehension of death or serious bodily injury; and a person acting under such reasonable apprehension of death or serious bodily injury is justified in using all the force that appears to him to be necessary to protect his life or person; and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him, viewed from his standpoint alone at the time; and in such case the party acting under such apprehension of danger, real or apparent, is in no event bound to retreat to avoid the necessity of killing his assailant.

16. The Court erred in refusing to give the following

charge requested by the defendant, to which defendant duly excepted and exception was noted for the defendant:

10.   Now, if you believe from the evidence beyond a reasonable doubt, that the defendant, Mark C. Powell, shot and killed W. T. Cowles, Sr., but you further believe that at the time of so doing the said W. T. Cowles, Sr., either alone or acting together with J. S. Cowles and Bernard South, or either of them, had made an attack, or appeared to be about to make an attack on the said Mark C. Powell which, from the manner of it, and all the facts and circumstances surrounding the parties at the time, caused him to have a reasonable belief or fear of death or great bodily harm, and acting under such belief or fear, the said Mark C. Powell, shot and killed W. T. Cowles, Sr., then you should acquit the said Mark C. Powell.

17.   The Court erred in refusing to give to the jury the following charge requested by the defendant, to which defendant duly excepted and exception was noted for the defendant:

11.   The Court further instructs you that if you believe from the evidence beyond a reasonable doubt that at such time and place the said W. T. Cowles, Sr., was armed with an iron poker and you believe that the same was a deadly weapon, or that the said W. T. Cowles, Sr., then and there so conducted himself as to cause the defendant reasonably to believe that he, the said W. T. Cowles, Sr., was then and there armed with a deadly weapon and was making such an attack on the defendant, Mark C. Powell, and thereby the defendant had reason to believe and did believe that he was in danger of losing his life or suffering great bodily harm at the hands of the said W. T. Cowles, Sr., and that the said defendant then and there shot and killed the said W. T. Cowles, Sr., such killing would be under the law justifiable, and you should acquit the defendant.

18.   The Court erred in refusing to give the following charge requested by the defendant, to which defendant duly excepted and exception was noted for the defendant:

12.   The Court further instructs the jury that if you believe from the evidence in this case, beyond and to the exclusion of a reasonable doubt, that the defendant, Mark C. Powell, was seated in his automobile and that W. T. Cowles, Sr., advanced upon him or approached him, in an angry and threatening manner, and at the time of so doing the said W. T. Cowles, Sr., put his hand to or in his breast as though he intended to draw a weapon, and that his acts and conduct were such as to engender in the mind of the said Mark C. Powell a reasonable belief that the said W. T. Cowles, Sr., was armed and intended to draw a weapon, and that under such circumstances said Mark C. Powell shot and killed the said W. T. Cowles, Sr., then you should acquit and find him not guilty.

19.   The Court erred in refusing to give the following charge requested by the defendant to which defendant duly excepted and exception was noted for the defendant:

''13.   The Court further instructs the jury that if you believe from the evidence in this case that defendant was seated in an automobile and that W. T. Cowles, Sr., advanced upon him in an angry and threatening manner, and that the said W. T. Cowles, Sr., had a metal poker concealed under his clothing and that the defendant then and there had reason to believe and did actually believe that he was being violently assaulted with a dangerous and deadly weapon and that he was in danger of receiving great bodily harm at the hands of the said W. T. Cowles, Sr., then the defendant's right of self-defense intervened, and if you believe that the defendant believed that it was necessary to shoot and kill the said 'defendant' (?) in order to protect himself, the defendant, from great bodily harm or death

and that the defendant did so, you should find the defendant not guilty.''

The 1st to the 7th assignments of error, inclusive, are addressed to the sufficiency of the evidence to support the verdict.   It appears that two contentions are advanced by counsel for defendant in error in this regard.   The first is that *the* evidence does not warrant a verdict of murder in the first degree, because of the lack of a sufficient showing of premeditation.   The definition of ''premeditation'' as enunciated by the Court in the case of Ernest v. The State, 20 Fla. 383, and which has been recognized as a proper definition since that time, is ''premeditation means *intent before the act,* but not necessarily existing any extended time before the act.''   Premeditation is proven, if from all the evidence the jury may reasonably conclude that there was a fully formed purpose to kill with enough time for thought and that the mind of the accused had become fully conscious of its own design.   Cook v. State, 46 Fla. 20, 35 Sou. 665. See also Keigans v. State, 52 Fla. 57, 41 Sou. 886.

Whether premeditated design to kill was formed by the accused must be determined by the jury from all the legal evidence and circumstances of the case.   Barnhill v. State, 56 Fla. 16; 48 Sou. 251.   22 Fla. 553.

Where there is a conflict in the evidence, but there is ample testimony to sustain the facts the Appellate Court will not grant a new trial on the ground that the verdict was contrary to the evidence, or to the weight of the evidence, when the verdict is in accordance with the law in the case.   McNish v. State, 47 Fla. 66, 36 Sou. 175; Logan v. State, 58 Fla. 72, 50 Sou. 536.

A careful examination of the record in this case disclosed that there was legal evidence before the jury which, if believed by the jury, was sufficient to constitute a basis for, and to support, the verdict which was rendered and

there is nothing in the record to show that the jury was influenced in the rendering of its verdict by any matter outside the evidence. The evidence was conflicting, but these conflicts appear to have been lawfully submitted to, and considered by, the jury and thereupon to have been resolved against the contention of the defendant. The trial court, exercising that most responsible function as a judge sitting in the trial where murder in the first degree was charged against the defendant, heard all of the evidence, saw all the witnesses and observed their demeanor as they testified before the jury, and, exercising sound discretion, refused to disturb the verdict, and we think this Court should not now assume to say that the verdict is contrary to the evidence.

The 8th assignment of error is based upon the exception to the testimony of Mrs. Bernard South offered by the State in rebuttal concerning a conversation in which she heard Mr. W. T. Cowles, Sr., participate over the telephone. This testimony was in rebuttal to the testimony given by the accused in regard to his conversation over the telephone with Mr. W. T. Cowles, Sr., just prior to the homicide. The accused had identified himself as the person who had the conversation with Mr. Cowles and had testified to his version of that conversation. The testimony objected to was properly admitted.

The 9th assignment of error is based upon a statement made by the State's Attorney during the course of his argument. Counsel both for the State and for the defense should confine themselves to the record in the argument of criminal as well as civil cases. This is a rule, however, which is often violated and it is not the policy of courts to grant new trials because of such violations, unless it appears that the passions or prejudices of a jury may have been aroused thereby or that the jury may have been misled and caused

to base their verdict upon some matter outside of the evidence. We see nothing in the remarks referred to in the assignment which would be calculated to arouse the passion or prejudice of the jury or from which we could reasonably infer that the jury had been thereby misled.

A new trial will not be granted on the ground that counsel made objectionable statements to the jury if the jury were cautioned by the court to disregard them. Thalheim v. State, 38 Fla. 169; 20 Sou. 938.

The 10th, 11th and 12th assignments of error are based upon the action of the Court in giving charges therein referred to. These charges were given among others by the Court in the general charge and taken together with the remainder of the charge and under the evidence which was submitted to the jury we find nothing in them to constitute reversible error.

In passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject; and if when thus considered the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the Court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Graham v. State, 72 Fla. 510; 73 Sou. 594.

There was sufficient evidence before the jury from which the jury could reasonably draw the conclusion that the defendant and the deceased had met at the appointed place, each with the purpose and intent of engaging in a combat, one with the other, and therefore the charges were appropriate to certain phases of the evidence which had been submitted to the jury.

The 13th, 14th, 15th, 16th and 17th assignments of error

are based upon the refusal of the Court to give certain charges requested by the defendant. Where the general charge of the trial judge covered the law of self-defense in such form as to enable the jury to apply the law to the facts in the case, the refusal of the trial judge to give several other instructions upon self-defense is not reversible error. Smothers v. State, 64 Fla. 159; 59 Sou. 900. See also Feuntes v. State, 64 Fla. 64; 59 Sou. 395.

The requested charge set out in the 18th assignment of error properly refused because it fails to correctly state the law in that in said charge there is no reference to the right of the defendant to act upon the reasonable belief that the deceased was about to inflict death or great bodily harm upon the defendant, nor that the defendant then and there entertained any fear of death or great bodily harm at the hands of the deceased.

The 19th assignment of error is based upon the refusal of the Court to give the charge asked for by the defendant, which charge, if correctly copied in the transcript, contains the word ''defendant'' as the person killed instead of the word ''deceased'' and was properly refused. If the charge presented contained the words ''W. T. Cowles, Sr.,'' or the word ''deceased'' where the word ''defendant'' appears as the person shot and killed, then the charge was fully covered by the general charge of the Court and it was not error for the Court to refuse same.

This disposes of every assignment of error presented by defendant in error. Having carefully considered each of such assignments, we are of the opinion that no reversible error is shown by the transcript of the record and that the judgment therefore should be affirmed. It is so ordered.

Affirmed.

ELLIS, C. J., AND WHITFIELD, J., AND KOONCE, Circuit Judge, concur.

TERRELL AND BROWN, J. J., dissent.

STRUM, J., not participating.

BROWN, J., dissenting:

The facts in this case are briefly as follows: The defendant and Mr. W. T. Cowles, the deceased, had an altercation over the telephone, in which hot words were passed between them, and an appointment was made to meet at Morgan's Garage on Main Street in Jacksonville, within a short time thereafter. This telephone conversation occurred about 3:45 P. M., and they met near the appointed place shortly after 4:00 o'clock. In the meantime, Mr. Cowles had gotten in touch with his son, Mr. Jack Cowles, and Mrs. South, a young married woman who had lodging in the home of Mr. W. T. Cowles, had telephoned her husband, and shortly after the meeting between the defendant and Mr. Cowles, Sr., young Mr. Cowles and Mr. South appeared on the scene. The defendant's attitude was conciliatory. He was endeavoring to explain the situation which brought on the altercation and to mollify Mr. W. T. Cowles and Mr. South. Whatever the merits of the altercation over the telephone, or the cause thereof, may have been, and whether the defendant was in the wrong or not, his attitude at the place of meeting on Main Street was that of a man who wished to avoid trouble. He was not the aggressor in the difficulty which arose there. Both the young Mr. Cowles and Mr. South claim to have struck the first lick. The elder Mr. Cowles was urging them on. A fight ensued in which the three men got the better of it, and during the course of it there was evidence that the elder Mr. Cowles struck the de-

fendant on the head with an instrument of some kind. The defendant retreated into the street and precipitately fled to his automobile which was standing nearby, jumped in, and drove away as rapidly as possible. When he got to the corner, he turned and came back on the other side of the street. His testimony was that he found the street traffic blocked at the corner by a big truck and, rather than wait, he turned and came back on the other side of the street, intending to go home.  About midway of the block, and about opposite the other side of Main Street where the difficulty had taken place, he drove up to the curb and came to a stop, and his wife got in the automoble. His testimony, and that of his wife, was that he saw his wife coming down the sidewalk and brought his car to a stop, calling to her to get in.  Just at that time the three men who had attacked him came across the street toward him.  When the elder Mr. Cowles had gotten within a few feet of defendant's automobile, someone shouted, ''Kill him,'' and Mr. Cowles made a motion as if to draw something from inside the breast of his coat, which was buttoned up (which afterwards proved to be a small iron poker), and the defendant shot him, using a pistol which was in his automobile, and which he testified that he had been in the habit of keeping in his car.  There was no evidence that he had this pistol at the time of the difficulty across the street, or that he had drawn or attempted to use a weapon of any kind during that difficulty.

Under the evidence in this case, I do not think that it can reasonably be said that this was a case where the persons involved engaged mutually in a combat.  It appears that the combat was forced upon the defendant; that the deceased and his son and Mr. South were the aggressors in the difficulty, and because of what had transpired beforehand, they were determined to give the defendant a beating, and that the defendant, however wrong he may have

been in regard to the matter which brought about the meeting, was anxous to avoid the fight. Under this state of the evidence, the Court erred in giving the following charge, which was excepted to by the defendant: ''The Court further charges you, gentlemen, that where two persons engage mutually in combat, knowing that such combat might or would probably result in death or serious bodily injury, and one of the combatants kills the other to prevent death or serious bodily injury to himself, such combatant cannot plead that such killing was in self-defense. In such case there is mutual combat, and both combatants are aggressors, and neither can justify the taking of the life of the other without having honestly and *bona fide* declined the combat on his part and retreated.'' This charge was calculated to lead the jury to believe that the Court was of the opinion that there was evidence in the case upon which a jury would be justified in finding that the defendant had willingly engaged in a mutual combat, in such a way as to deprive him of setting up self-defense.

For the same reasons, I am inclined to believe that the Court erred in charging the jury further as follows: ''But, if a combatant, after having retreated, returns to the combat for the purpose of renewing the same and as the result of such renewal of the combat, he slays his adversary to save his own life or to avoid great bodily harm he cannot avail himself of the plea of self-defense.'' There was, in my opinion, no evidence which would justify the jury in finding that the defendant, after having retreated, returned to the combat for the purpose of renewing the same. Both these charges were excepted to and assigned as error.

Nor can I escape the conclusion that the giving of these two charges was calculated to prejudice and injure the defendant, although the Court's charge as a whole, with one exception to be hereinafter noted, was a very able and

fair charge and one which did credit to the learned judge who delivered it. The remaining error, if such it be, in the charge of the Court, concerns a question upon which this Court has several times been equally divided and involves no criticism whatever of the learned trial judge. It pertains to a question upon which there has long been a sharp division of opinion among our own and the appellate courts of a great many of our States; and that is, the meaning of the word "premeditation" as used in the statutory definition of murder in the first degree, which is, quoting from our own statute, Section 5035, Revised General Statutes: "The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being," etc.

The court, in its general charge, defined "premeditated design" as follows: "Now gentlemen, premeditated design to effect the death of a particular individual is a necessary ingredient in murder in the first degree, and this premeditated design to effect death must appear from the evidence to the exclusion of and beyond a reasonable doubt, otherwise the defendant cannot be convicted of murder in the first degree. Premeditated design to effect death as used in the statutes relating to homicide means an intent to kill formed before the act of killing, and of which intent the killing is the result. There is no prescribed length of time necessary to constitute 'premeditation.' It is sufficient if there was a fully formed purpose to kill and enough time for thought, for the mind of the defendant to have become fully conscious of the design to kill, formed before the act, and that the act was the result of this design." This part of the charge was not excepted to, though counsel for plaintiff in error urgently insists that the evidence in this case is not sufficient to show premeditation, and that mere intent before the act is not tantamount to premeditation within the

meaning of the statute. Ordinarily, a defendant cannot claim the benefit of any error committed by the court in its charge which was not excepted to at the trial and assigned as error in this court, but this court will nevertheless take note of fundamental errors, vitally affecting the essential rights of a defendant, where they appear upon the record, although not assigned as error. The particular portion of this charge which impresses me as being erroneous is the sentence reading: "Premeditated design to effect death as used in the statutes relating to homicide means an intent to kill formed before the act of killing, and of which intent the killing is the result." If this definition be erroneous, it can hardly be said that the remainder of the paragraph is sufficient to correct it.

It is true that this definition is sustained by the majority opinion, and by the first headnote in the case of Ernest v. The State, 20 Fla. 383, cited in the majority opinion, but my thought is that this definition reduces the definition of murder in the first degree to the level of manslaughter. If mere "intent before the act" constitute premeditation, what distinction remains, so far as the mental state back of the act is concerned, between the two degrees of homicide, murder and manslaughter, which it was the purpose of the statute to distinguish and separate? Even when one kills in heat of passion under such circumstances as to constitute manslaughter, there is nevertheless present "the intent before the act;" yet, assuredly, it could not be claimed that such intent amounted to premeditation. Our statute makes allowance for the frailities of human nature and defines the degrees of unlawful homicide, as murder in the first degree, murder in the second degree, murder in the third degree, and manslaughter, the punishment ranging from death for murder in the first degree to a term of imprisonment or fine for manslaughter. Assuredly, there must be some difference in the intent in murder in the first degree

and the intent in manslaughter when there is such a marked difference in the degree of punishment inflicted. Certainly, when the statute uses the words "premeditated design to effect the death of the person killed," in defining murder in the first degree, it meant something more than a mere intent to kill formed before the act of killing. While such intent to kill before the act is necessarily embraced within the premeditated design to effect death, referred to in the statute, it is not synonymous therewith; there must be something more; and, therefore, to instruct a jury that premeditated design to effect death as used in the statute, means an intent to kill formed before the act of killing, constitutes a failure to give full definition of premeditated design, and tends to mislead the jury as to the complete meaning of such term; and as this pertains to that very element which differentiates murder from manslaughter, and which means that in the one case the offender should be punished with death or imprisoned for life, or in the other to merely get a term in the penitentiary or a fine, it is a matter of vital importance, both to the public and to the accused.

This can hardly be considered a thoroughly settled proposition in this jurisdiction. Subsequently to the Ernest case, this court, in the case of Cook v. the State, 46 Fla. 20, 35 So. 665 divided on this question. Chief Justice Taylor and Justices Shackleford and Hocker were of the opinion that a charge similar to the one here involved was erroneous and misleading as a definition of murder in the first degree, while Justices Carter, Maxwell and Cockrell held the contrary opinion. Both sides of this difficult question were presented with exceptional ability in the several opinions written in that case, and it would be presumptuous on my part to endeavor to add anything thereto. Again this question came up in the case of Keigans v. The State, 52 Fla. 57, 41 So. 886, and again the court

divided equally on the question, Justices Taylor, Hocker and Parkhill holding the charge erroneous, and Chief Justice Shackelford and Justices Cockrell and Whitfield *per contra*. And again in the case of Stokes v. The State, 54 Fla. 109, 44 So. 759, a similar charge was involved, and again the Court was divided, the personnel being the same as in the Kiegans case. In the case of Miller v. The State, 75 Fla. 136, 77 So. 669, the question involved was whether the evidence was sufficient to show a premeditated design to effect the death of the person killed and thus to support the verdict of murder in the first degree. In that case Mr. Justice Ellis, now Chief Justice, reviewed the decisions above referred to, and the majority of the court held that: "Premeditation is an essential element in the crime of murder under the statutes of this State. It should be alleged in the indictment and proved beyond a reasonable doubt at the trial. The mere fact of the killing does not raise a presumption of premeditation such as makes the offense murder in the first degree and cast upon the defendant the burden of showing that it was not. Something more than mere intention to kill must be shown; it is necessary that some circumstances admissible as evidence be shown from which may be legitimately inferred the fact of premeditation." Again the court was divided, though not evenly; Chief Justice Brown and Justice Taylor concurring, and Justices Whitfield and West dissenting.

It is with some trepidation that I enter upon the discussion of this much mooted question in any degree whatsoever, but in doing so, it is not my purpose to repeat the argument and reasoning which have already been permanently enrolled upon the records of this court by abler hands. Suffice it to say that to my mind the opinion of Mr. Justice Hocker, concurred in by Chief Justice Taylor and Mr. Justice Shackelford, in the case of Cook v. The State, *supra*, shows that the charge hereinabove quoted is

erroneous, though similar charges have been used by very eminent and learned courts, and no doubt by the majority of our circuit judges, for many years, nevertheless, my conviction is that by charges of this nature the statutory phrase "premeditated design" has been emasculated so as to mean merely design, or intent, thus overlapping the definition of murder in the first degree with that of manslaughter, and defeating the purpose of the Legislature when, in defining murder in the first degree, they used the very potent and significant words above quoted, and which are not used in any other portion of the statutes. As was said in Cook v. The State, *supra*: "It cannot be said that we are disturbing a settled and clear construction of the statute, where there is no settled and clear construction discriminating the meaning of what is called the intentional killing in murder from the intentional killing which may exist in manslaughter."

The word *design* may be in a sense synonymous with *intent*, or intention; but the word *premeditation* is not. Webster tells us that the word premeditate is derived from the Latin words *prae*, meaning before, and *meditari*, to meditate, and defines such word, as a transitive verb, as meaning, "to think on, and revolve in the mind beforehand; to contrive and design previously; as to premeditate robbery." The word *premeditate*, as an intransitive verb is defined thus: "To think, consider, deliberate, or revolve in the mind, beforehand." The noun, premeditation, is defined as: "Act of meditating beforehand; previous deliberation as to action; forethought; planning or contriving. Thinking of beforehand." The same authority defines the word design, as a noun, in part as follows: "A plan or scheme formed in the mind of something to be done; preliminary conception; idea intended to be expressed in a visible form or carried into action; intention; purpose; often used in a bad sense for evil intention or purpose;

a scheme; plot.'' It would seem, therefore, that the words
''premeditated design'' as used in the statute defining
murder in the first degree, necessarily imply some degree
of cool deliberation, as distinguished from a design which
is the sudden, rash conception of a mind under the sway of
heat or passion, resulting from some sudden and sufficient
provocation; that is, the mind must be sufficiently cool and
self-possessed to consider and contemplate the nature of
the act then about to be done.   This does not mean that the
law should attempt to prescribe the length of time which
it will require for the mind to form such premeditated
design, for it is obvious that this would differ with different
individuals, and the mind of man often operates with such
lightning-like rapidity as to render any effort at time-
measurement of its operations impossible for all practical
purposes.   As was well said in Carter v. The State, 22 Fla.
553, 558:   ''The law does not prescribe what length of time
shall intervene between the formation of the design to effect
the death of another and the execution of such design.   It
would indeed be impracticable to do so.   All it requires is
that there be such an interval of time between the intent
and the act as will repel the presumption that it was done
upon a sudden impulse, conceived and executed almost
instantaneously, or that its execution followed so quickly
after the design as to show that the mind was not fully
conscious of its own intention.''  See also Olds v. State, 44
Fla. 452, 33 So. 296; Commonwealth v. Drum, 58 Penn.
9, 16; 29 C. J. 1116, and cases cited.

   After a careful reading of the voluminous record in this
case, I am not by any means satisfied that there was suf-
ficient evidence of premeditation to authorize the verdict
of first degree murder, and am inclined to the opinion that
the defendant's motion for new trial should therefore
have been granted.

   TERRELL, J., concurs in the conclusion.