O’CONNELL, Justice.
Johnnie Hill, after trial by jury, was found to be guilty of murder in the first degree and sentenced to death.
On this appeal appellant, hereinafter referred to as the defendant, questions only the sufficiency of the evidence.
The record before us shows that shortly after midnight on the morning of November 1, 1960 two white women, named Ward and Reum, who were employed in a bar, momentarily left the bar and went into an adjoining package store, also owned by their employer. They remained there for a few minutes and decided to return to the bar by going out the back door of the package store onto an area used for parking and thence into the back door of the bar.
One of the women, Mrs. Reum, testified that as they walked between the two establishments they were accosted by a Negro male, the defendant here, who said “Come on, honey” or “Come on with me, honey,” all the while brandishing a revolver in the direction of Mrs. Ward, who was slightly ahead of her.
Defendant then apparently took both women by the arm whereupon both commenced crying and begging defendant to release them, offering to give him money if he would let them go. Defendant replied that he wanted no money and said “Shut up, do you want me to kill you?”
Defendant pulled the two women across the parking lot to a brick wall where Mrs. Reum broke loose and started to run, whereupon defendant said “Don’t run, I will shoot you.”
At this time Mrs. Ward lunged for the gun and she either fell down or was knocked down by the defendant. During this struggle Mrs. Reum was able to get away, run to the bar, and scream for help. In the fight to get away her sweater was torn off.
Mrs. Ward testified to the same events. In addition, she testified that when Mrs. Reum broke away the defendant knocked her down then pulled her up and began forcing her across an alley; defendant then asked her for money and she gave him all she had, which was about two dollars in change; defendant did not release her and she fought with him; he hit her several times about the head and face with the revolver, inflicting wounds that required 22 stitches to close; he took her behind a garage or room and “he really started tussling then and some of my top sweater came off”; her brassiere strap broke and she had nothing on from the waist up; she heard Mrs. Reum scream and she knew help was on the way; she thought he hit her again and she remembered nothing further until she heard shots; and that when she came to she picked up her clothes and ran down the street. On cross examination in response to a question as to whether defendant took her sweater off or it came off in the struggle she answered: “As far as I am concerned he took the sweater off.”
Wesley Goodwin, a state’s witness, testified that he was in the bar with the decedent, John David Brightwell, when Mrs. *70 Reum came in screaming that a colored man had accosted her and Mrs. Ward and dragged Mrs. Ward off. He testified that several men ran out the hack door of the bar; several went one way and he and the decedent ran toward a street corner; he heard a scream and then another; about three houses down he saw people scuffling on the ground and ran over, finding the defendant lying on top of Mrs. Ward; he ran up and grabbed defendant by the neck and shoulder, pulling him backwards and off the woman; as he pulled defendant up defendant fired a shot; they grappled in a standing position, during which defendant fired several more shots, and then he pulled defendant down on top of him, holding him around the neck; decedent, Bright-well, was in front of defendant hitting him and trying to subdue him while the shots were being fired; when he pulled defendant down decedent got “astraddle of him, and I can’t say how many shots he fired at which time but there were shots fired”; another man grabbed the revolver just as the last shot was fired; and that defendant seemed subdued whereupon he, Goodwin, raised up and saw decedent lying on his back on the ground.
The evidence shows that a policeman arrived shortly thereafter, called two ambulances, and took both defendant and the decedent to a hospital. The decedent was dead on arrival. An autopsy showed that the decedent had been shot twice, once under the left arm and once in the right chest and that either shot would have caused rapid death.
Defendant took the stand and testified that he had an appointment to meet a girl friend at the place where he encountered Mrs. Ward and Mrs. Reum and that when he first saw Mrs. Ward he thought she was the girl friend, so he said “Come on.”
He explained the altercation with Mrs. Ward and Mrs. Reum saying that after the women started screaming:
“Then I got upset and I told them I was not going to hurt them, and they continued to scream, and I told them what I was out there for and I was trying to get them far enough away to keep from drawing anybody around there, far enough to give me a chance to get away from them, and this woman slipped down and I picked her up and they kept offering me money and I just wanted to get away, and they continued screaming, and I kept pulling them to get a chance to get up Gadsden Street so I could make a get-away. We got up there and when I turned her loose she started hitting me and beating me. At that time some guys ran up behind me and hit me on the side of the head with a piece of iron. * * * ”
Defendant testified that he had no intention of raping, robbing or kidnapping the two women and that he had the gun in his pocket because he was attempting to return it to its owner. He did not deny that he held a gun on the two women and did not explain why he had the gun in his hand when he encountered Mrs. Ward in what he testified to be a mistaken belief that she was his girl friend.
The substance of defendant's testimony is that he mistook Mrs. Ward for his girl friend, that when he did so the two women grabbed him and would not let him go, and that he had to drag them with him in an effort to get away.
Defendant did not testify as to the shooting of the decedent.
On cross examination defendant admitted that four days after the homicide he had given a different version of the event. He explained this by saying that at the time of giving the first version he “was not aware of what happened” because he was still suffering from the effects of the beating he had received. In this first version he stated that he came into the vicinity of the bar where he saw a man and woman talking and the woman was crying; the man said “come here”; defendant walked *71 away, whereupon he heard shots; and that he fell down and people jumped on him.
As stated earlier the only question presented is the sufficiency of the evidence.
Defendant contends that the evidence is grossly inadequate to prove premeditated intent to kill anyone. He also argues that the evidence does not establish that defendant was engaged in the perpetration or attempted perpetration of any of the felonies mentioned in the first paragraph of Sec. 782.04, F.S.A. so as to make proof of premeditation unnecessary. The only felonies named in the statute which could be said to have been committed or attempted here are robbery, rape or kidnapping.
Defendant argues that at most the evidence shows he was guilty of committing an aggravated assault on Mrs. Ward when he was interrupted by decedent and Mr. Goodwin, and that the shooting of decedent was accidental. He points out that the evidence shows no mention by the defendant of sexual intercourse nor any act by him which would justify the jury in concluding that he intended to rape or attempted to rape either of the women. Likewise he argues that the evidence does not show that he intended to or did rob the women, pointing out that he refused money when he first accosted the women. In his brief he contends that if he did accept money from Mrs. Ward it was because she urged him to do so and not from a motive to rob. He argues that under these conditions the taking of the money would not be robbery as defined in Williams v. Mayo, 1937, 126 Fla. 871, 172 So. 86.
Without further discussion on the question we agree with defendant that the facts of the case will not support a conclusion that the defendant killed decedent in an attempted kidnapping.
The State contends that the facts and circumstances point unerringly to the conclusion that defendant committed homicide with premeditated design and intent. It also contends that the evidence is sufficient to have enabled the jury to have determined that defendant did rob Mrs. Ward and defendant did attempt to perpetrate rape on one or both of the women.
While we do not find that the evidence would adequately support a conclusion that defendant attempted to rape either of the women here involved we do find the evidence to be sufficient to justify the conclusion that whatever defendant’s initial motives might have been he did subsequently form the intent to rob and that he did rob Mrs. Ward and further that decedent was killed by defendant in the altercation which followed immediately. Mrs. Ward testified when she fell defendant “ * * pulled me up and started pulling me back across the alley by this house there, and then he ran into a clothes line and he stopped behind this house and asked me for money and I said all I had was some change.’1 She testified that he had the gun all the time, that she was begging him not to kill her, and that she gave him $2.00 in change.
As to premeditation there are ample facts and circumstances to support the conclusion that defendant had formed the intent to kill any person who interfered with his objective in accosting the two women and in effecting his escape. The evidence on this point is conclusive.
Both women testified that defendant had a gun in his hand and threatened to kill each of them.
Neither the brutal beating which he administered to Mrs. Ward, his dragging the women the considerable distance which he did, nor his continuing to “tussle” with Mrs. Ward after he knew Mrs. Reum had escaped and screamed for help make credible defendant’s statement that all he wanted to do was to get away.
Nevertheless, taking defendant’s own statements at face value, i. e. that he was trying to escape and nothing more, it thus appears that he was willing to kill in order to escape, for according to Mrs. Ward he *72 said “Come on, or I will shoot you.” Further Mrs. Reum testified that she was crying and begging and defendant said to her “Shut up, do you want me to kill you?” And later when she started to run he said “Don’t run, I will shoot you”, at which time Mrs. Ward grabbed the hand in which defendant held the gun.
These statements in themselves seem to us to be sufficient evidence of defendant’s predetermined intention to kill in order to achieve his objective, whether it was robbery, rape or merely to escape.
Moreover, the evidence shows that the death weapon, a .22 calibre revolver, was fired from three to five times in two or more intervals. The decedent was shot twice, once under the left arm and the second time in the right chest, which indicates that they were not fired in one burst but that either defendant or decedent materially changed position between the two shots.
Mrs. Ward testified that several minutes transpired between the two series of shots which she heard.
Mr. Watson, a witness who found Mrs. Ward running down the street, testified that he recalled hearing three shots and that the shots were spaced apart.
Wesley Goodwin, the witness who pulled defendant off Mrs. Ward, testified that as he raised defendant from the ground he fired one shot; as they “grappled around” in a standing position he fired several more shots; he then pulled defendant down and decedent got “astraddle” of him; “I can’t say how many shots he fired at which time, but there were shots fired”; and that as another rescuer grabbed the pistol “defendant fired the last shot in his pistol.” This witness testified that “at least one of the shots was aimed at me, because I had a bullet hole in my pants leg.” He also testified that defendant was able to aim the gun at all times he was firing it.
In his testimony defendant stated that as he was struggling with Mrs. Ward “some guys ran up behind me and hit me on the side of the head with a piece of iron” and that “I had a gun in my pocket and I reached to get the gun out of my pocket, and the gun fell out of my hand.”
The effect of this portion of defendant’s testimony is that he did not fire the revolver, which is so contrary to all the evidence as to be incredible. He did not testify that the shooting was accidental. Nor does any other evidence indicate that the homicide was an accident.
The fact that the revolver was shot several times at intervals over a period of several minutes, together with the fact that defendant was in control of the gun and could aim it during this period, negates the contention that the discharge of the revolver was accidental. The facts surrounding the shooting coupled with the prior threats to shoot and kill made by defendant to the two women- are more than adequate to support the conclusion that the defendant had formed the intent to kill a human being when he shot decedent.
 That premeditation may be proved by circumstantial evidence is beyond question. Conner v. State, Fla.1958, 106 So.2d 416; Powell v. State, 1927, 93 Fla. 756, 112 So. 608; and Padgett v. State, 1935, 121 Fla. 42, 163 So. 291. Premeditation may be inferred from such matters as the nature of the weapon used, the presence or absence of adequate provocation, the manner in which the homicide was committed, the nature of the wounds, and the manner in which they are inflicted. Larry v. State, Fla.1958, 104 So.2d 352.
The circumstances in this case afforded ample basis for the jury to find the necessary element of premeditation.
We have fulfilled the requirements of Sec. 924.32(2), F.S.A. by carefully examining all the evidence and have determined that the trial was without error, the evi *73 dence was sufficient to support the judgment, and that the ends of justice do not require a new trial.
The judgment is accordingly affirmed.
ROBERTS, C. J., and TERRELL, THOMAS, HOBSON, DREW and THORNAL, JJ., concur.