Mr. Justice VanValkenburgh
delivered the opinion of the court.
In April, 1879, the grand jury in and for Alachua county presented to the Circuit Court of that county an indictment against this plaintiff in error containing two counts, one for assault with a dangerous weapon with' intent to murder, the other for assault with a dangerous weapon with intent to rob.
On the 19th of November, 1879, Green was tried upon the indictment, and found guilty of “assault with intent to rob,” and sentenced to confinement at hard labor in the State prison for the term of twenty years.
After the evidence in the case was closed,"the counsel for *175 the prisoner “asked the court to compel the State Attorney to choose upon which count in the indictment he would proceed to prosecute, which request the court refused/* to which ruling and decision the counsel for prisoner excepted.
Before sentence a motion for new trial was made upon the following grounds:
1. Because the verdict was contrary to law and the evidence.
2. The evidence was not sufficient to warrant a verdict of guilty.
3. Because the defendant was forced to trial without his witnesses, who had been regularly subpoenaed.
4. Because, had his* witnesses been present, defendant could have proved that he was sick at his home from eight to twelve o’clock on the night of the attempted robbery.
5. Because defendant’s counsel was not furnished with a list of eighteen jurors at the trial, as the law requires.
6. Because the State Attorney challenged peremptorily three of the regular panel furnished to defendant’s counsel, when, by law, he was only entitled to two challenges.
7. Because, after the regular panel was exhausted, the sheriff called persons from the by-standers to complete the jury, one at a time, and put them on the defendant.
8. Because the court refused to compel the State Attorney to elect upon which count he would prosecute.
9. Because since the trial defendant has discovered evidence by which it would appear that defendant was at his own house on the night of the said attempted robbery from half-past nine until after eleven o’clock.
10. Because two separate and distinct offenses, and not of the same character, were charged in the indictment, and the State was allowed to proceed upon both counts.
The court overruled the motion and the counsel for defendant excepted.
The counsel for the defendant then moved in arrest of judgment, assigning for reason therefor the tenth reason assigned on the motion for new trial. The court denied the motion and defendant’s counsel took an exception.
From the judgment of the court this defendant brings his writ of error, and assigns the following errors:
In refusing to grant a new trial upon the several grounds set forth in his motion for new trial, and in refusing to arrest the judgment upon the ground taken in his motion for arrest of judgment.
The first and second reasons assigned on motion for new trial were that the verdict was contrary to law and the evidence in the case.
F. A. Underwood, the first witness introduced upon the part of the State, testified that “while sitting with his wife “and children at eight o’clock at night, the doors of my “ house closed, I. heard a considerable noise in my yard near “the house, and it appeared as if some one was having a “combat with my dogs in the yard. I opened the door . “ and stepped out of the house. No sooner was this done “than I was fired upon — one buckshot going through my “ pant’s leg near the foot, and some others took effect in the “palings; discovered there next day. I could see persons, “ but could not discover who they were. They ran off, and “ I went back into my house and closed the door. About # “twelve o’clock the same night-some persons knocked my “ door down with a heavy piece of timber. I jumped up “and went to door; there were three parties; don’t know “who they were. One was standing on the door steps, “rather in shade of the house and immediately in front of “me. The other two men were standing off from door “ steps ton or fi Cteon feet, where the moonshine fell upon “them. T stood in door a moment, and the one on door “stepped back to where the moonshine fell upon him. I “did not recognize cither of them. There were orange “ trees in the yard, but the moon -shone directly on these “parties. Two of‘them ran off straight from the door to ^ a fence that surrounded the yard. I could see them as “they ran off, and could see them until they nearly reached “the fence. The other one did not run straight off, but “ turned to the left corner of the house from the way I was “standing and I saw no more of him. Next morning I “went for some neighbors and my son, and we examined “ the premises. "We could only follow the tracks about “three hundred yards from the house; no trace could he “seen of them after this. The track of one of the party “ who ran straight from the house was Claiborn Green’s, the “the defendant; the other I did not know. I knew his “track because it is peculiar. He is bent-legged in right “ leg and in walking his heel of right foot scarcely touches “ the ground. I* could discover it imperfectly at the door “ next morning. One place it was plain at the door in run“ning from the house at twelve o’clock at night. Green’s “track was not so plain, because in running it was not so “ plain as in standing or walking. He did not run all the “way after getting over the fence. It was in ground that “had been tended that year, and there his track was plain. “I have known Claiborn Green for several years; he has “lived close to me part of the time; lived two miles from “ me at the time of the occurrence. He has worked for me “ off and on since I have known him. I never knew any- “ thing wrong about him before this. There has never been “any falling out between us, or hard feelings. He has “ always been a hard working boy, and has a wife and “ children. * * * *
“ Other colored people lived as near me as Green; one of “them is bent-legged like Claiborn, but makes a different “track. I knew both tracks — Claiborn’s is the larger of “ the two. The track of the party who turned to the left “corner of the house, and who did not run straight from “ door to fence, took a circuitous route and joined the other “ two about the point where we failed to make other traces “of the track. We tracked him plain in the circuit made. “ This circuitous track was not Claiborn Creeris.”
John Underwood, son of the complainant, testified that the' next morning after the assault upon his father’s house he. “ examined the tracks about the yard and through the fields to where they could not be tracked further. I could plainly see Claiborn Green’s track in the yard. I know his track well; he makes a different track from any one I ever saw. He has a bent leg, right bends in, and in making track in walking the heel of the bent leg hardly touches ground. It is a large track. * * * * ,1 saw the circuitous track where it turned to left of house and met up with and joined the other, two or three hundred yards from house. The Claiborn Green track is the one that turned to left ofhouseand made the circuitous route to the left and joined others as stated. I swear further that neither one of the tracks made by the men who ran straight from the door was Claiborn Green’s. We never measured the track at all. Two other colored men live in neighborhood; make track crooked, and have bent legs; but their tracks are different from Green’s — the defendant Green’s is larger.”
Annie Cone, another witness on part of State, testifies to the fact of her being at complainant’s house “two nights and a day after the disturbance. I could plainly see one track made by Claiborn Green at the door step, only one.” She further testified that there “are two men whose legs are almost in same fix with defendant’s, who live in the neighborhood; but their tracks differ from defendant’s, though they walk on front of foot and heels hardly touch the ground.- Green’s track was a much larger track than the others, and very distinct from the other two.”
Another witness swears the track was that of the defendant; that he was a shoemaker, and had made shoes for defendant.
*176 Tliis is tlie substance of the evidence given on the part of the State. We think it cannot be insisted upon successfully that there was sufficient to warrant the finding of the jury, that defendant was guilty of an assault with intent to rob. The two principal witnesses, the complainant and his son, both having equal opportunities for the examination of the tracks found, (the only evidence of the guilt of the prisoner,) testify in direct opopsition to each other — the one identifyingfying the tracks leading from the door of the house to the fence, and the other those leading to the left of the house and by a circuitous route to where it joined the others, two or three hundred yards from the house. The evidence of Annie Cone is certainly insufficient; she saw only one track which she identified as that of the defendant, .and that two nights and a day after the alleged assault was made. Green may have been there in the meantime, and there is no evidence to connect that one track with the actual assault.
The same difficulty arises in the case of the evidence of the shoemaker, and, besides that, it' is evidence that the track examined and sworn to be Green's was that of a man barefooted or without shoes. In criminal cases this court will weigh the evidence, especially in a case of felony, where the penalty is so severe, and where, in our opinion, it preponderates, as in this case, so strongly against the verdict that we cannot conclude that it was founded upon evidence upon the part of the State, no testimony being introduced by defendant, will grant a new trial; and such should be -the course in all courts where such trials are had.
And further, there appears to be no testimony showing any attempt to commit robbery.
In the case of Leake vs. The State, 10 Humph., 144, the court say: “We have repeatedly had occasion to assert that in criminal cases we will weigh the evidence, and, if it preponderates against the verdict, grant a new trial. And we do this out of the great regard in which the law holds life and liberty, declaring, as it does, that in every instance where either the one or the other is sought to be assailed by a criminal prosecution, the guilt of the person charged shall be established beyond a reasonable doubt. In administering the law with this benign provision in favor of criminals, it would be mockery in a court of last resort to hold, that upon an application for a new trial it would not weigh the evidence, but hold the verdict of the jury conclusive of the criminal's guilt, if there were any proof by which it could be sustained. This would be to place no higher estimate upon life and liberty than upon property, and to subject them to the same rule in relation to this particular.” See also Bishop on Crim. Procd., §1105 and 6; Copeland vs. The State, 7 Humph., 479; Cochrane vs. The State, Ib., 544.
The third ground upon which the motion for a new trial was based is that the defendant was forced to trial without his legally subpoenaed witnesses. The record discloses the fact that when this’case was called for trial,, the defendant's witnesses, three in number, who had been subpoenaed, were not present, that the counsel for the defendant asked for attachments against these witnesses, and that the court refused to allow such attachments to issue, and declared that it was defendant's business to see that his witnesses were in court, that the case would proceed to trial, and gave defendant's counsel no opportunity to make the necessary affidavits for a continuance of the case. It further appears from the record, that the defendant had been in jail for eight months and was brought from there into court on that occasion. It is true the judge says in the bill of exceptions, in connection with these other facts that appear therein, "the case was called on Jfondaj', and set down for trial on Wednesday morning, nothing then said about absence of witnesses.” There is no doubt from the record but that the witnesses had been subpoenaed and were not,in attendance on the day when the ease was tried. The defendant had a right to have his witnesses present for examination, and in asking for an attachment from the court, he was asking only what he was in justice and in law entitled to. It was a matter of no moment that the cause had been set down for the day on which it was tried; if the defendant had caused his witnesses to be duly subpoenaed, and they had failed or neglected to appear in pursuance of such subpoena, he was entitled to the process of the court to compel their attendance, and reasonable time should have been granted for making the necessary proof, which if sufficient would have authorized the issuing of the attachments. It is provided by statute that where a witness has been duly summoned, and shall fail to appear, that it shall be the dviy of the court, on motion, to order an attachment against such defaulting witness, returnable at such time as the court may direct. Thomp. Dig., 334, §2.
The defendant claims by his fourth ground for new trial, that had his witnesses been in attendance on the trial, he could have proved that he was sick at his house from eight to twelve o'clock, on the night of the alleged attempted robbery.
The verdict of the jury might have been different, had the defendant procured his witnesses under the attachment which it is made the duty of the court, on due proof of summoning, to grant.
The fifth ground assigned for new trial, that defendant's counsel was not furnished with a list of eighteen jurors, is not tenable. There is no evidence contained in the record that the county of Alachua contains more than one thousand registered voters, and the court cannot take judicial notice that such fact exists. The presumption is, that the proper officers have performed their duties in respect to the drawing of the jury, in pursuance of the law. There is also no evidence in the record that any challenge or exception was taken to the list of the twelve jurors as presented to defendant's counsel by the clerk, on his application.
The sixth ground for new trial, that the State peremptorily challenged three of the regular panel of petit jurors, is also untenable. The court in the bill of exceptions-in the case says: "The evidence before me as to the challenge of Bennett (the third person alleged to have been challenged by State Attorney peremptorily), clearly satisfied me that the deputy clerk made a mistake in so entering, though he thought it was correct. The sheriff, and counsel for the State, declaring that Bennett was not objected to by State Attorney, and the court upon investigation at the time, thought that the deputy clerk was mistaken.in his entry as made.” We must take the certificate of the judge, under his hand and Beal, in the bill of exceptions, as correct in regard to this point.
The seventh point, or ground of motion, to-wit: that the sheriff called by-standers to complete the jury, one at a time, and did not furnish a full list of such by-standers, is in our opinion not well taken.
The statute (Chap. 1628, Laws of 1868, §21,) provides that "when, by reason of challenge or otherwise a sufficient number of jurors, duly drawn and summoned, cannot be obtained for the trial of any cause, civil or criminal, the court shall cause jurors to be summoned from the by-standers, or from the county at large, to complete the panel.” This statute does not contemplate the issuing .of a special venire, but provides that when the regular panel of jurors has been exhausted, the court shall cause the requisite number necessary to try the cause then pending to be immediately summoned from the by-standers. They must be "such as are qualified and liable to be drawn as jurors, according to the provisions of law.” The number so to be summoned must be sufficient to complete the jury to be empanelled for the trial of such cause, and it is not neces *177 sary for the sheriff or other officer to make and sign a written return, as the whole proceedings are had in open court, and appear upon its minutes. The by-standers so summoned are subject to the same challenge as to qualification as are the jurors in the regular panel. (O’Conner vs. State, 9 Fla., 215.) But even if the objection was good the defendant could not avail himself of it here. It nowhere appears in the record or otherwise that he has been “injured by the irregularity,” nor does it appear that “any objection was made before the returning of the verdict.” The statute provides (chapter 1628, §26,) “no irregularity in any writ of venire facias, or the drawing, summoning or empaneling of petit jurors, shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the returning of the verdict.” The first and. only objection appearing in the record was taken after verdict and upon motion for a new trial.
The ninth ground for new trial, that defendant has discovered evidence material to his defence, it is not necessary to pass upon, inasmuch as we have already said there was not sufficient evidence on the part of the State to warrant the verdict.
The eighth and tenth grounds for a new trial, and also upon which a motion was made in arrest of judgment, viz: that two separate and distinct offences, not of the same character, were charged in the indictment in two distinct counts, and that the court refused to compel the State Attorney to elect upon which count he would prosecute, will be considered together. Whatever may have been the rule at the common law, with respect to the joinder of offences of the grade of felonies in one indictment, the question is settled by. a reference to the statutes of this State. Chapter HOT1, laws of 1861, was evidently adopted with particular reference to the question which is raised in this case. The language of that statute is: “That no indictment shall be quashed, or judgment in a criminal case be arrested, or new trial granted, on account of any defect in the form of the said indictment, or of misjoinder of offences, * * * * unless the court hearing and deciding upon any such application shall be of opinion that the said indictment was so vague, indistinct and indefinite as to mislead the accused and embarrass him, her or them in the preparation of his, her or their defence, or expose him, her or them, after conviction or acquittal, to substantial danger of a new prosecution for the same offence.” In this case there is no pretence that the indictment was either vague, indistinct or indefinite, or that the accused was mislead or embarrassed in the preparation of his defence.
This defendant was convicted of an “assault with intent to rob,” but not of “an assault with intent to rob, being armed with a dangerous weapon,” as charged in the indictment. The punishment of the offence of which he was convicted is, as provided by statute, (section 46 .of sub-chapter III., of chapter 1637,) confinement “in the State Penitentiary not exceeding ten years, or by fine not exceeding one thousand dollars and imprisonment in the county jail not exceeding one year.” The court sentenced him “to confinement at hard labor in the State Prison for the term of twenty years.”
Had he been convicted of assault with intent to rob, being armed with a dangerous weapon, and there was no 'other good ground for a new trial apparent in the record, the sentence would have been lawful under section 37 of the last named act. We feel it our duty to notice this point, although it has not been assigned as error.
The judgment is reversed, and a new trial ordered upon the count in the indictment charging him with intent to rob, the legal effect of the verdict being to acquit him of an assault with intent to murder.