OSCAR MING, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed March 23, 1925.

Where a verdict is not in accord with the manifest weight of the evidence or with the justice of the case, the judgment will be reversed and a new trial granted.

A Writ of Error to the Circuit Court for Bay County; D. J. Jones, Judge.

Judgment reversed.

*J. Ed Stokes*, for Plaintiff in Error;

*Rivers Buford*, Attorney General, and *Marvin C. McIntosh*, Assistant Attorney General, for the State.

BROWNE, J.—The plaintiff in error Oscar Ming was convicted of murder in the first degree, with recommendation to mercy, for the killing of Frank Ross.

The cutting took place about dusk.

There is uncontradicted testimony by three witnesses, one a white man, that about five o'clock that afternoon, Ross cursed and abused the defendant and used threatening language towards him.

One of the witnesses, Mr. Pennington, testified that the defendant was drunk at the time.

Very shortly afterwards Ming and Ross with a number of other negroes got in a truck to go to the camp where they were working.

It is undisputed that while they were on the truck, the deceased was cursing and using bad language, and was re-

monstrated with by one of the older men in the party and also by the defendant. The deceased resented this and said to the defendant, "What have you got to do with it? Shut up your mouth. I will mash your mouth for you." When the truck stopped, he jumped off and ran around and struck the defendant twice. The defendant then got out of the truck and he and the deceased got into a scuffle but were separated by some of the party.

Shortly afterwards they got into another scuffle, and were again separated.

Up to this point there is no conflict in the testimony in any material point.

Two negro women who claim to have been eye witnesses to the cutting, testified in effect, that after the scuffles, one of the men on the truck asked the deceased to give him his knife and he surrendered it to him; that they heard some one ask the defendant to give up his knife and he refused to do so; that the deceased went to pick up his cap, when he was cut by Ming.

Some of the men who went out on the truck testified that shortly after the scuffles that the deceased and the defendant engaged in, the deceased, when asked to give up his knife, said: "Ain't no use you or nobody else telling me anything. I am going to kill Oscar Ming, son of a bitch." He then advanced upon Ming with his knife in his hand, and as he approached, the defendant opened his pen knife; by that time the deceased struck at him with his knife, and the defendant warded off the blow and cut him twice in the neck.

Seven witnesses who were present testified substantially to the same effect as to how the killing occurred. Each one of them denies that the deceased gave his knife to him before the fatal affray.

Mr. Vickers, a white witness, testified that Nancy Cooper, one of the negro women who testified that the defendant

was the aggressor, told him on the afternoon after the affray, that she was back in the house when the cutting occurred and did not see it, but she heard the lick that killed the man.

The State's case as to how the killing occurred is supported by only two witnesses, and if Mr. Vickers' testimony is true, it leaves the State's case supported by but one witness, against which is the testimony of seven other witnesses, exclusive of the defendant who testified positively that the deceased was the aggressor, and was attempting to cut Ming when he received the fatal stabs.

Deputy Sheriff Mendheim testified that he visited the scene of the cutting that night, and saw a pool of blood on the ground, and near it a knife without any blood on it, and that he took from the defendant the knife with which the cutting was done.

Both knives were introduced in evidence.

The finding of this knife near the blood is corroborative of the testimony of the defendant's witnesses; all of whom swear that the deceased had a knife in his hand and was advancing upon the defendant when he was cut.

In view of the whole testimony and the gravity of the offense of which the plaintiff in error was convicted, we think that justice requires that the judgment be reversed, and it is so ordered.

WEST, C. J. AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.