PLEAS FOREHAND v. STATE.

171 So. 241.

En Banc.

Opinion Filed December 11, 1936.

*C. R. Mathis* and *Robert Mathis, Jr.,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

ELLIS, P. J.—Pleas Forehand was on the 10th day of October, 1935, convicted of the murder in the first degree of William D. Pledger in the County of Bay and seeks to reverse the judgment of conviction on writ of error.

The person alleged to have been killed by Forehand was William D. Pledger and the offense was alleged to have been committed in Bay County on the 7th day of September, 1935.

The controlling point in this controversy is whether the evidence discloses a premeditated design on the part of the accused to take the life of the deceased or some other person.

The evidence discloses in substance the following facts, that is to say, the jury was reasonably justified from the evidence in finding that such facts existed: William D. Pledger, the deceased, died on September 9, 1935, from a mortal wound inflicted by a gun shot or pistol shot in the back near the vertebral column in the dorsal region. The bullet penetrated the body, inflicting wounds in the intestinal tract and making its exit in front of the body in the abdominal region. That shot was fired by the accused, Pleas Forehand, during the evening of September 7, 1935. There is located on the highway about ten miles from Panama City a night club called the Nite Owl Club, a place where drinks of different kinds are sold and where dancing at certain hours is participated in by patrons of the club. On Saturday night, September 7th, Pleas and Lonnie Forehand, brothers, went to the night club on a truck driven by a man named Slay. They arrived at the scene of the difficulty about eight or nine o'clock. The driver turned the truck in from the highway and stopped near the south end of the club building near the dance hall. Several young men, some of whom were from the C. C. C. Camp nearby, were upon or near the highway a short distance eastward of the club house. Pleas and Lonnie Forehand went from the truck, from which they dismounted, to the group of young men assembled upon or near the highway. In a short while an altercation arose, resulting in a fight in which a man named Shriver, who came to the club house in the truck with Slay and the two Forehand boys, took part with the Forehand brothers. In that difficulty Shriver had his clothing torn and he was slightly wounded by the use of a knife in the hands of one of the Forehands. Pledger, who was a deputy sheriff employed at the club, was present.

There is evidence in the record from which it can be rea-

sonably determined that the altercation which ensued at or near the highway was participated in by the Forehand boys, if indeed not the result of a declared purpose by them to "take the place" and handle Pledger if he interfered.

In a short while the accused entered the dance hall showing some evidence of having been in a fight and appealed to a man named Burke, who was officiating as dance caller, to assist him against the C. C. C. boys, whom the accused said were fighting "us," meaning probably himself and brother. Burke told him to leave the hall, which he did, and immediately thereafter he became involved in an altercation with Pledger, the deceased, who inquired as to the trouble, whereupon the accused reiterated the charge that the C. C. C. boys had been fighting "them." Pledger thereupon undertook to take both the accused and his brother, Lonnie, away from the place. He suggested that they go with him. The accused struck Pledger in the face and Pledger replied with a blow from his black jack. Thereupon the difficulty arose in which the accused shot and killed Pledger.

In the struggle which ensued between Pledger and the two Forehand brothers and William Burke, Lonnie Forehand secured the black jack and attempted to strike Pledger with it. They grappled and Lonnie Forehand and Pledger fell to the ground, after the accused had seized the pistol worn by Pledger in a holster. He fired upon the two men on the ground four or five times, the last shot being the one which struck Pledger in the back, because from that moment he began to make exclamations indicative of pain.

As a result of the difficulty both Lonnie Forehand and Pledger died from wounds received by them in the altercation. Such were the facts which the jury were reasonably justified in finding to be true.

Murder in the first degree is defined in this State by Section 7137, C. G. L., 1927, to be:

"The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary, shall be murder in the first degree."

A premeditated design to take the life of the person killed or any human being is an essential element of the crime of murder in the first degree. The fact of premeditation may be established by circumstances as any other fact and must exist an appreciable length of time before the killing so that the perpetrator of the act may know and be conscious of the nature and character of the act which he is about to commit and the probable result therefrom in so far as the life of the assaulted person is involved. See Yates v. State, 26 Fla. 484, 7 South. Rep. 880; Robinson v. State, 69 Fla. 521, 68 South. Rep. 649, L. R. A. 1915 E 1215, Ann. Cas. 1917 D 506.

Premeditation has been defined by this Court to mean intent before the act, but not necessarily existing any extended time theretofore. Ernest v. State, 20 Fla. 383; Lowe v. State, 90 Fla. 255, 105 South. Rep. 829, holding that the intent to kill may enter the mind of the killer a moment before the act. Savage v. State, 18 Fla. 909; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251; Carter v. State, 22 Fla. 553; Buchanan v. State, 95 Fla. 301, 116 South. Rep. 275; Rhodes v. State, 104 Fla. 520, 140 South. Rep. 309; Wooten v. State, 104 Fla. 597, 140 South. Rep. 474.

The substance of the holding in these cases upon the subject of premeditation as an element in the offense of mur-

der is that if the purpose or intention to kill is definitely framed in the mind of the killer and he proceeds to act in the execution of such thought or design, the element of premeditation exists. It is not a question of how long the definite design or purpose to kill has been entertained by the killer. It is only sufficient that the evidence adduced shows to the exclusion of a reasonable doubt that the purpose to kill was definitely formed and definitely acted upon an appreciable length of time prior to the commission of the act which resulted in the taking of human life.

In the Lowe case, *supra,* Mr. Justice TERRELL referred to the language of State v. McCormie, 116 N. C. 1033, 21 S. E. Rep. 635, and to Wharton on Criminal Law, and said:

"In the first place if in order to make murder in the first degree, it is necessary that the idea should be proved to have been conceived a week or a day ahead, there will be no murder in the first degree at all, for the guilty party will take care that the conception be concealed until the limitation is passed. In the second place, all psychological investigation shows that the process of mental conception lies beyond the scrutiny of exact observation."

It is also true that a well defined purpose to kill may be induced, compelled or constrained by anger of such degree as for the moment to cloud the reason and momentarily obscure what might otherwise be a deliberate purpose by its impelling influence, as was clearly stated in the case of Whidden v. State, 64 Fla. 165, 59 South. Rep. 561:

"A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below

murder in the first degree, although the passion does not entirely dethrone the actor's reason."

In the case of Rivers v. State, 75 Fla. 401, text 406, 78 South. Rep. 343, the Court, after quoting from the Whidden case, added:

"There must be an adequate or sufficient provocation to excite the anger or arouse the sudden impulse to kill in order to exclude premeditation and a previously formed design. A man is not permitted to act upon any provocation which he may think sufficient to excuse him from murder in the first degree in taking human life, merely because it is sufficient to excite his anger and impulse to kill and thereby reduce his crime to manslaughter. It is a well known fact, that a person who has never been accustomed to restrain his passions, and who has a depraved mind regardless of the rights of others and of human life, of a cruel, vindictive and aggressive disposition, will seize upon the slightest provocation to satisfy his uncontrolled passions by forming a design to kill and executing the design immediately after its formation, therefore the law lays it down as a rule that an adequate provocation is one that would be calculated to excite such anger as might obscure the reason or dominate the volition of an ordinary reasonable man."

We have read with a great deal of interest the discussion of the element of premeditation as an essential ingredient in the offense of murder in the first degree and the influence of a dominating passion in the mind of the killer which momentarily coerces or impels the act resulting in the death of the person killed as made by the able counsel for the plaintiff in error and think that in such discussion he is supported by the decisions of this Court above cited and the many cases referred to by him in his brief. We have

been much aided by that brief in arriving at the conclusion announced in this case.

As the element of premeditation is an essential ingredient of the crime of murder in the first degree it is necessary that the fact of premeditation uninfluenced or uncontrolled by a dominating passion sufficient to obscure the reason based upon an adequate provocation must be established beyond a reasonable doubt before it can be said that the accused was guilty of murder in the first degree as defined by our statute.

This case, therefore, is reduced to two questions: first, whether the evidence establishes beyond a reasonable doubt a premeditated design on the part of the accused to kill Pledger; and, second, whether in such killing the mind of the accused was dominated by an impelling passion based upon an adequate provocation that momentarily displaced the capacity to form a premeditated design to take the life of Pledger.

Our consideration of the entire evidence in this case leads us to the conclusion that while Forehand and his brother probably began a quarrel of disturbance of the peace with members of the group at or near the highway just east of the club house they receded from such a controversy and the accused went into the club house to seek the aid of the witness, Burke, the dance caller, to quell the disturbance which the Forehands had probably begun. Not until Burke requested the accused to leave the dance hall and until the accused had retired from the building was he accosted by Pledger who, armed with a black jack and a pistol, ordered the two Forehands to accompany him. In the altercation arising between him and the accused, who protested against him and his brother being taken away from the scene, Pledger drew his black jack, struck the accused and a four

cornered struggle ensued between the two Forehands, Pledger and Mr. Burke. Whether this may not be considered as a continuation of the disturbance which the Forehands may have originated with the group of young men at the road side a few moments before, there is little or any doubt that both the Forehands, fighting together in that unjustified controversy, were still smarting under its influence and were angered by the effort of Pledger to take them into custody and ignore the complaints which the Forehands had made against the "C. C. C." boys.

There was much swearing and abusive language and other disorderly conduct, of which the accused was guilty, but it is entirely possible, even probable, that the assault by Pledger upon the accused with the black jack aroused the latter's passion which reached its climax when he beheld his brother on the ground under Pledger, who, to the probably distorted imagination of the accused was inflicting personal injury upon the brother of the accused.

The accused having taken from Pledger the pistol which the latter carried in his holster, fired at the two persons upon the ground. The fact that one of those persons was the brother of the accused and was in the danger of being struck by a bullet from the pistol in the hands of the accused seems to us to indicate the presence of a blind and unreasoning passion which momentarily obscured the reason of the accused and displaced any capacity to form a premeditated design to kill Pledger. The extreme and imminent danger in which Lonnie Forehand was placed when lying upon the ground under Pledger seems to have had no influence whatsoever upon the momentarily mad and enraged defendant, who, in all the evidence, cannot be said to have any ill feeling or cause of quarrel against his brother.

In this state of case we are of the opinion that the evidence was not legally sufficient to exclude a reasonable doubt as to the existence of a premeditated design on the part of the accused to take the life of Pledger. Green v. State, 17 Fla. 669; Williams v. State, 58 Fla. 138, 50 South. Rep. 749; Ming v. State, 89 Fla. 280, 103 South. Rep. 618; Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618; Fuller v. State, 92 Fla. 873; 110 South. Rep. 528; Heath v. State, 97 Fla. 330, 120 South. Rep. 846; Troop v. State, 98 Fla. 385; 123 South. Rep. 811.

The above cases show that this Court has modified the common law rule *"Ad questionem facti non respondent judices; ad questionem legis non respondent juratores"* (It is the office of the judge to instruct the jury in points of law—of the jury to decide on matters of fact) announced in the maxim.

The modification of that rule has been made by this Court not only in cases involving life but in criminal cases of less degree and in civil cases. Callaway v. State, 112 Fla. 599, 152 South. Rep. 429.

In this view of the entire case as disclosed by the record, we are of the opinion that the judgment of conviction should be reversed and the cause remanded for a new trial to the end that another jury may examine the evidence as to the suggestion of the existence of a premeditated design on the part of the accused or whether his act in killing the deceased was murder in the second degree or manslaughter.

Judgment reversed.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.