DREW, Justice.
The appellant, James Callaway, has been tried, convicted and sentenced to death in the Circuit Court for Taylor County consequent upon a jury verdict finding him guilty of murder in the first degree without recommendation of mercy.
The homicide out of which the charge arose occurred on the evening of November 18, 1956, at a filling station operated by the deceased, Auley Cockcroft, in Salem, Florida. Decedent was shot by an assailant while alone in the station and died as a result several days later at a hospital in Georgia, medical testimony being that the path of the bullet was from the upper back through the abdomen. A waitress from an adjoining restaurant witnessed the departure of a two-toned Plymouth automobile immediately after the shooting, but the record does not reflect what, if any, description of the driver was given to the investigating officers at the time.
Early on the following morning an automobile of the make and color specified was found abandoned some ten miles distant. It contained numerous items of clothing and personal possessions bearing the name ■of James Walton Callaway, the appellant, and at least one fingerprint identifiable as his. Callaway’s prior criminal record was traced and, together with a “rogue’s gallery” photograph, published locally. On December 12, 1956, an indictment was returned charging appellant with murder in the first degree.
On February 26, 1957, more than three months after the crime was committed, Callaway was arrested in Cleveland, Ohio, and, waiving extradition, was brought to Taylor County for arraignment on March 4th. The next day defense counsel was appointed and trial set for a date six days later.
The court denied defense counsel’s motion for a 30-day continuance based on alleged need for more extensive investigation in the preparation of the accused’s defense of alibi because the location of out-of-state witnesses was complicated by distance and lapse of time, and based on necessity for interview of sixteen witnesses already subpoenaed by the prosecution. Motion for change of venue filed simultaneously was denied, and trial was set anew for March 20, nine days subsequent to the date originally scheduled, and a total of 14 days after appointment of counsel in the case.
The evidence, viewed in a light most favorable to the state, includes: testimony of a local mechanic who worked for a few minutes on appellant’s car on November 17, the day before the murder, and who “identified” the above mentioned photograph of appellant as the driver whom he saw in the car; testimony of decedent’s wife, who worked as a cook in the restaurant adjoining her husband’s service station, and who visited the station a few minutes before the shooting, saw the above described automobile being serviced by her husband, observed the driver through the window on the opposite side of the vehicle, and subsequently identified appellant as the driver from examination of his photograph and confrontation in his cell.
After appellant was taken into custody, and some three and one-half months after the events transpired, one William Hamel-mann came forward and stated for the first time upon seeing the prisoner in the Taylor County Jail that he had witnessed the shooting and could identify appellant *366 as the guilty party. Hamelmann said he observed appellant at close range in the station while making a purchase just prior to the homicide, and that a few minutes later when he was walking back around the outside of the station from the restroom in the rear, he looked through the windows, observed a struggle, saw appellant knock Cockcroft down and almost simultaneously “heard a shot' — -saw the flame from the gun.” The witness said he then saw appellant leave in his car, a “reddish” and cream two-toned Plymouth with a Texas license.
He reported on cross-examination that his own automobile was all white or cream colored but his wife’s car was a maroon and white two-tone. His testimony was that he left the scene in his own automobile immediately in the wake of the appellant’s car because he was scared and excited. Mr. Hamelmann had recently arrived in the area and was preparing to open a truck stop. He drove immediately to this place of business down the highway upon which appellant made his escape, but did not recall seeing the ambulance or accompanying officers, who testified to having met the speeding suspect car which Hamelmann followed. While identifying appellant as the assailant, Mr. Hamelmann was unable to recall even generally his manner of dress, whether he wore a hat, or any other distinguishing characteristic. He said he read newspaper accounts of the events referred to, but did not report his knowledge to anyone except his wife, who did not testify. The only witnesses who testified to having observed the departure of the suspect car stated that they saw no other vehicle leaving at that time.
Appellant’s story from the outset was that he had never been in the locale where the crime was committed, and that upon the date in question he was in transit, hitchhiking en route generally to Mobile from Atlanta, where he had, on the previous night, abandoned his car because he could not buy gasoline and knew that the vehicle was being traced for repossession by his finance company for default in payments. He could not, when taken into custody three months later, recollect his precise movements on the critical date, and the only alibi witness produced at trial was the operator of a motel near Lexington, Kentucky, where appellant stayed on November IS, 1956.
Toward the close of the trial defense counsel requested a day’s postponement to permit the production of a witness from Knoxville, Tennessee, whose testimony was alleged to be vital to defendant’s case. Counsel presented in detail the confusion in communication which had delayed his arrival. The motion was denied by the court in the following language:
“He is an out of state witness; a subpoena wouldn’t mean anythin to him unless he wanted it to. But while I would very much like for my young friends to have this witness here, I didn’t feel that I could in good conscience grant the continuance requested. We have got twelve jurors in custody here, and we must of necessity be in Madison on Monday to open the Spring Term of Court there, and while under all of the circumstances I would be glad to stretch a point on the motion if the circumstances were not like they are, I do not think I will be justified in doing so either as a matter of fact or law. The motion will be overruled.”
This reasoning presents a vivid contrast with the solemn treatment traditionally accorded such efforts by counsel on behalf of an accused:
“The allowance to an accused person, whether guilty or innocent, and regardless of the heinousness of his crime, of a reasonable time to prepare for his trial on a felony charge, is a part of our constitutionally required ‘due process of law.’ * * *
“The protection of the Constitution stands at the threshold of every criminal trial, and, when a defendant is erroneously denied the benefit of his *367 constitutional rights, it is ground for setting aside a judgment of conviction against him, no matter how guilty the transcript brought here on appeal may show that the defendant was otherwise proven to be' on the record.
“It appears to me that in these trou-blous times, when the people and their tribunals of government are becoming more and more impatient of being required to any longer observe the ancient forms of constitutional procedure —when even the courts themselves are now being boldly asked to ‘waive the rules’ and advance to final passage to the penitentiary and the electric chair those merely accused of crimes when the heinousness of the accusation made against an accused had led to public hysteria and aroused community indignation — we may well contemplate anew that immortal declaration of the Supreme Court of the United States rendered in a similar period of hysteria growing out of internecine war, in the case of Ex parte Milligan, 4 Wall. 2, text 118, 18 L.Ed. 281. In that case, the Supreme Court of the United States, when it was called on to decide a similar question to what we have involved here, uttered this imperishable declaration of constitutional liberty:
“ ‘No graver question was ever considered by this court, nor one which more nearly concerns the rights of the whole people; for it is in the birthright of every American citizen when charged with crime, to be tried and punished according to law. The power of punishment is, alone through the means which the laws have provided for that purpose, and if they are ineffectual, there is an immunity from punishment, no matter how great an offender the individual may be, or how much his crimes may have shocked the sense of justice of the country, or endangered its safety. By the protection of the law, human rights are secured; withdraw that protection, and they are at the mercy of wicked rulers, or the clamor of an excited people.’ ” McDowell v. State, 110 Fla. 404, 149 So. 53, 55, dissenting opinion.
The significance of this ruling in the instant case, and also the earlier denial of a continuance, becomes more apparent when considered in relation to post trial motions by defendant.
Motion for new trial, which was also denied, was predicated upon multiple grounds including discovery of evidence which “defendant could not with reasonable diligence have discovered and produced * * * at the trial,” and was accompanied by an affidavit of an out-of-state witness who positively identified and placed appellant outside Atlanta, Georgia, early on the morning of the day of the shooting involved in this case. Another affidavit was that of a witness from Knoxville, Tennessee, who placed appellant in that city on the morning of November 17, 1956. Also included were affidavits of due diligence by defense counsel, and affidavits of three local residents who reported statements by decedent’s wife, in their presence shortly after the commission of the crime, that she could not identify her husband’s assailant.
It has been said that evidence of an impeaching nature is not ordinarily sufficient basis for such a motion (Douth v. State, Fla., 85 So.2d 550), and that alibi witnesses are in a sense merely cumulative or corroborative of a defendant’s own testimony. But under the circumstances of this case such objections do not, from an examination of the decided cases, appear to be fatal. Adams v. State, 55 Fla. 1, 46 So. 152; Tyson v. State, 87 Fla. 392, 100 So. 254; Harvey v. State, Fla., 87 So.2d 582. The restrictive conditions stated in the cases, that the moving party should show due diligence, that the evidence must be material, must go to the merits, and be such as might likely produce on another trial an opposite result, provide a trustworthy guide in this situation and are fully *368 met in the case at bar. Cf. Hicks v. State, 127 Fla. 669, 173 So. 815. Certainly it is unlikely that local residents would have come forward with the information in question until after the witness had taken a contrary position at the trial.
In view of the chronological history of the case above detailed, the speed with which the cause was ultimately concluded relative to the lapse of time since commission of the crime, the unsatisfactory state of the record evidence in many particulars, the nature of the defense involved, and the disposition of earlier efforts of counsel to obtain time for preparation and presentation of evidence, we are of the opinion that the negative ruling on the motion for new trial was an abuse of the discretion vested in the court in these instances. F.S. § 920.-04(3), F.S.A.
Other points argued need not, in view of this conclusion, be determined at this juncture. The law with respect to the issue of premeditation has, in recent decisions, been fully treated. Larry v. State, Fla., 104 So.2d 352; Daniels v. State, Fla., 108 So.2d 755. See also Miller v. State, 75 Fla. 136, 77 So. 669, L.R.A.1918C, 562; Rhodes v. State, 104 Fla. 520, 140 So. 309; Forehand v. State, 126 Fla. 464, 171 So. 241. No assumption can be made that the principles there elaborated will not be properly applied to the facts adduced in the instant case.
Pursuant to subparagraph (2) of Section 924.32, Florida Statutes, F.S.A., we have reviewed the entire record, and upon consideration, collectively, of all factors above delineated, in conjunction with the gravity of the penalty exacted, have concluded that the interests of justice require a new trial.
Reversed and remanded.
TERRELL, C. J., and THOMAS, HOB-SON, THORNAL and. O’CONNELL, JJ., concur.
SEBRING, J., agrees to judgment.