498 So.2d 902 (1986)
Bobby Earl LUSK, Appellant,
v.
STATE of Florida, Appellee.
No. 67335.
Supreme Court of Florida.
November 26, 1986.
Rehearing Denied January 5, 1987.
*903 Richard Ware Levitt, New York City, for appellant.
Jim Smith, Atty. Gen., and Mark C. Menser and John W. Tiedemann, Asst. Attys. Gen., Tallahassee, for appellee.
EHRLICH, Justice.
Appellant, while an inmate at Florida State Prison in 1978, stabbed to death another inmate, Michael Hall, during Thanksgiving Day lunch and in front of numerous witnesses. A jury convicted appellant of first-degree murder and recommended a life sentence. The trial court, however, overrode the jury and imposed a sentence of death. We affirmed the conviction and sentence in Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). This appeal is from the trial court's denial, following an evidentiary hearing, of post-conviction relief, pursuant to Rule of Criminal Procedure 3.850. We have jurisdiction, article V, section 3(b)(1), Florida Constitution. We affirm.
The only issue raised by appellant which warrants discussion is that he received ineffective assistance of counsel at the guilt and penalty phases of his trial. As set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the proper standard for reviewing counsel's performance is whether a defendant received "reasonably effective assistance." Id. at 687, 104 S.Ct. at 2064. In order to determine whether counsel's performance fell below the level of reasonably effective assistance, the Court developed a two-part test:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to *904 deprive the defendant of a fair trial, a trial whose result is reliable.
Id. In order to satisfy the first component of this test, a convicted defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment. Courts reviewing ineffectiveness claims must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066. We find that under the facts presented, appellant has failed to satisfy this first component.
Employing the Strickland analysis requires us to evaluate the challenged conduct from "counsel's perspective at the time." Id. at 689, 104 S.Ct. at 2065. At the time of appellant's trial, his counsel was faced with defending a prisoner who was serving three consecutive life terms for two convictions of armed robbery and a simultaneous conviction for first-degree murder. Appellant fatally stabbed a fellow inmate, Hall, three times in the back in the Florida State Prison cafeteria during the Thanksgiving Day noon meal; this killing was witnessed by numerous inmates and prison personnel. There was evidence which showed that the victim Hall and two other inmates had robbed appellant in his cell the morning of the murder and had threatened reprisals against appellant if he reported the attack. Trial counsel testified at the hearing below that he understood the overwhelming evidence against his client and therefore felt his primary purpose was to save his client's life.[1] Accordingly, at trial the defense strategy was one of self-defense; appellant testified that Hall had threatened to "take him out" and that Hall attacked him first with a knife of his own.
In the motion for post-conviction relief and as presented at the evidentiary hearing thereon, appellant alleged that trial counsel's reliance during the guilt phase on the "all or nothing" strategy of self-defense was, under the facts confronting counsel, such an unreasonable choice that it fell outside the wide range of competent assistance. According to this theory, trial counsel was faced with defending a client who, if convicted of first-degree murder, would then be faced at sentencing with at least two "automatic" aggravating factors, i.e., committed while under sentence of imprisonment; and, previous conviction of another capital felony. Therefore, as it was the sole job of trial counsel to save his client's life, and conviction of a lesser degree of homicide would, in practical effect, be as advantageous as an acquittal, trial counsel's failure to pursue another defense was simply unreasonable. According to appellant's expert who testified below, the defense that should have been presented was that set forth in Forehand v. State, 126 Fla. 464, 171 So. 241 (1936). In Forehand we held that a "dominating passion" operates to exclude premeditation and reduces a first-degree homicide to a lesser degree of murder or manslaughter. Under appellant's theory, trial counsel should have presented this defense based on the following facts: The victim, Hall, was serving a thirty-year sentence for the "sexually related, gang torture murder" of an inmate at another prison; appellant's well-grounded fear that reporting Hall's threats to prison officials would only increase the danger to appellant; the prison officials inability or unwillingness to protect inmates from other inmates; and appellant's "exemplary" behavioral record at Florida State Prison prior to his encounters with Hall.[2]
*905 The issue before us is whether trial counsel's decision to rely solely on a theory of self-defense was so unreasonable as to fall outside the wide range of professionally competent assistance. Mindful that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," 466 U.S. at 689, 104 S.Ct. at 2065, we must conclude that trial counsel's decision to rely on self-defense here was a strategic choice which did not fall outside the acceptable range of competent choices. Considering all the circumstances facing trial counsel initially, self-defense was arguably the only viable choice: Appellant and others were willing to testify about Hall's threats towards appellant, including the robbery incident occurring the morning of the murder; Hall's violent character was brought out at trial and his nickname of "Yard Dog" was explained to the jury to mean an inmate gang leader. While it may have been desirable, as appellant now suggests, to have introduced, during the guilt phase, Hall's conviction for murdering another inmate, the jury was made aware of Hall's reputation for violence and we cannot conclude that this single omission was such so as to render counsel ineffective. Neither can we conclude that the failure to present a defense based on "dominating passion" was an unreasonable choice under the circumstances. The cases cited by appellant supporting this defense, e.g., Forehand v. State; Quintana v. State, 452 So.2d 98 (Fla. 1st DCA 1984); Tien Wang v. State, 426 So.2d 1004 (Fla. 3d DCA), review denied, 434 So.2d 889 (Fla. 1983), all point out that the defendant acted in a moment of rage without time to cool off or reflect. The facts here show that the incident involving Hall's threats against appellant on the morning of the homicide transpired at approximately 9:00 a.m.; appellant's fatal attack against Hall occurred around 1:00 p.m. This four hour period to reflect negates the existence of a dominating passion murder which occurs without the time necessary to form a premeditated design to kill. Appellant's own testimony was that after Hall's threat, appellant told himself, "I ain't gonna take it no more." Indeed, we can discern no evidence from the record before us which would have even warranted a jury instruction on this defense.[3]
Appellant's argument that trial counsel was ineffective at the penalty phase must similarly fail. It must be noted from the outset that trial counsel secured a jury recommendation of life. Appellant alleges here that this recommendation can only be attributed to the fact that trial counsel "finally" introduced Hall's prior conviction for murdering another inmate. This is a totally speculative contention. As previously discussed, Hall's reputation for violence and his threats against appellant were before the jury during the guilt phase. It is equally possible that the jury's recommendation of life was based on trial counsel's persuasive plea to the jury for mercy, or on the less palatable, but equally possible assessment by the jury that appellant deserved some "break" for ridding the world of the likes of Michael Hall. In short, we cannot know, and will not speculate on, what prompted the jury's decision. It may have been a combination of all of these or other factors. What is clear however, is that the jury's recommendation cannot be alleged to have been produced by counsel's ineffectiveness.
Appellant's expert below contends that had trial counsel introduced more evidence in mitigation, then it would have either persuaded the trial court to follow the *906 jury's recommendation, or it would have forced this Court to disapprove the trial court's override of the jury's recommendation under the applicable standard set forth in Tedder v. State, 322 So.2d 908 (Fla. 1975). We find these contentions too, to be totally speculative. The evidence now claimed by appellant that should have been admitted in mitigation is largely evidence of appellant's troubled family background. Appellant testified about his background and personal problems during the penalty phase. We must agree with the trial court below in its order denying relief, that this "new evidence" is largely cumulative and would not have affected the ultimate sentence imposed in view of the aggravating factors affirmed by this Court in appellant's direct appeal.
It is easy in studied hindsight to conclude that more should have been done. However, under the strictures of Strickland v. Washington, the purpose of the sixth amendment guarantee of assistance of counsel is to ensure the criminal defendants receive a fair trial, one that "will render the trial a reliable adversarial testing process." 466 U.S. at 688, 104 S.Ct. at 2065. Our review of this entire record leads us to conclude that appellant received a fair trial and was not deprived of the right of the effective assistance of counsel.
Accordingly, the order under review is affirmed.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, SHAW and BARKETT, JJ., concur.
NOTES
[1] Trial counsel had experience in at least forty capital trials from both the defense and prosecutorial sides of a case. Most of these trials, like this one, were held in Bradford County, where Florida State Prison is situated. Trial counsel testified below that his experience with Bradford County juries was that they were extremely familiar with cases involving inmate crimes, and that there exists almost a "defense bias" in such cases, so long as no prison guards were injured. Trial counsel further testified that Bradford County juries were leery of "lawyer games" and were similarly disdainful of attempts to "put the system on trial."
[2] Appellant also urges that these same facts should have been brought out to support the chosen theory of self-defense.
[3] Appellant's expert at the hearing below opined that given the prison's "violent and dangerous" environment, and the knowledge that complaining to prison officials about the psychotic killer Hall would have only increased the danger, appellant lived in such a total, animated fear of Hall so as to make dominating passion the only reasonable defense under the circumstances. Trial counsel's failure to raise ingenious arguments or theories does not render the assistance ineffective. Further, establishing this type of a dominating passion defense would require putting the prison system "on trial," a fact which trial counsel, experienced with Bradford County juries, felt was inherently unsound. We will not "second-guess" such reasonable strategic choices.